**In re Norman Anthony SCOTT, Appellant.**

**No. 78–5137.**

United States Court of Appeals, Fourth Circuit.

Argued April 3, 1979.

Decided Sept. 12, 1979.

Parker B. Smith, Baltimore, Md. (Smith & Langhoff, Baltimore, Md., on brief), for appellant.

David Dart Queen, Asst. U. S. Atty., Baltimore, Md. (Russell T. Baker, Jr., U. S. Atty., Baltimore, Md., on brief), for appellee.

Before BRYAN, Senior Circuit Judge, and WINTER and PHILLIPS, Circuit Judges.

JAMES DICKSON PHILLIPS, Circuit Judge:

Defendant appeals from a judgment imposing sentence for criminal contempt. The sole issue raised on appeal is whether the trial judge erred by summarily convicting of criminal contempt pursuant to Rule 42(a) of the Federal Rules of Criminal Procedure. We affirm.

The defendant Scott, Jerry Rowell and Garnett Jones robbed a branch of the Maryland National Bank in Baltimore. Each was subsequently charged in a four-count indictment with bank robbery, bank larceny, assault and kidnapping. Scott pleaded guilty to one count of bank robbery, 18 U.S.C. § 2113(a), and was sentenced to 17 years imprisonment. The remaining counts were subsequently dismissed. Pursuant to a plea agreement, Scott was later called as the government's next to last witness in the case against his accomplice Garnett Jones. As Scott took the stand his counsel informed the court that Scott had indicated to counsel that Scott would not testify regardless of the possible penalties that might be imposed against him. The Assistant United States Attorney then informed the court that the Assistant Attorney General had approved a grant of use immunity under 18 U.S.C. §§ 6002–6003 for Scott. At the Court's request Scott's counsel advised Scott, in open court, of the consequences of immunity and his refusal to testify. Despite this advice Scott persisted in his refusal. He was then brought before the bench and was informed that he had been granted immunity and was being ordered to testify; that nothing he said on the stand could be used against him; that if he refused to testify in spite of the court's order he would immediately be held in contempt and would be given the maximum sentence allowed by law, to run consecutive to his current sentence for bank robbery. Scott indicated that he understood his situation and the consequences of his refusal to testify. He resumed his position on the stand and again indicated his refusal to testify. Subsequent questions by the prosecutor concerning Scott's plea agreement and his involvement in the robbery went unanswered. Scott finally indicated that he was invoking his Fifth Amendment rights. The trial judge then held Scott in contempt and stated that he was sentenced to the maximum term (not then specified) allowable by law, to run consecutively to his current sentence.[1] Two days later, in compliance with Rule 42(a), the trial judge entered a certificate and order reciting the facts above summarized and indicating that the sentence imposed in the summary proceeding was six months imprisonment.

Defendant first contends that his conduct was not so seriously contumacious as to warrant the invocation of Rule 42(a) summary contempt procedures against him, and that the court should have granted him a hearing pursuant to Rule 42(b) to explore possible mitigating circumstances. He further contends that since his contempt sentence was appended to a term he is currently serving, the consecutive sentence might

---

1. In spite of Scott's refusal to testify, Garnett Jones was soon thereafter convicted.

affect his eligibility for parole and thereby increase his period of incarceration, and that he should therefore have been afforded a jury trial.

Defendant offers no reason sufficient to distinguish his case from *United States v. Wilson*, 421 U.S. 309, 95 S.Ct. 1802, 44 L.Ed.2d 186 (1975), where the Supreme Court held that two accomplices' bald but informed refusals to testify in the face of a court order and a grant of immunity "plainly fall within the express language of Rule 42(a)." *Id.* at 314–15, 95 S.Ct. at 1806. The *Wilson* Court expressly held that a refusal to comply with a lawful court order, though the refusal be respectfully delivered, is inherently contemptuous, and that when the refusal has the effect of disrupting or frustrating an ongoing proceeding, a trial judge may properly exercise his powers under Rule 42(a). *Id.* at 316, 95 S.Ct. 1802; *cf. United States v. Steelhammer*, 539 F.2d 373 (4th Cir. 1976) (order violative of constitutional right not lawful).

■ Defendant nonetheless contends that summary conviction and punishment were here inappropriate because, among other things, his refusal to testify did not actually obstruct the progress of the trial or frustrate the prosecutor's case, and the summary action prevented the exploration of possible exculpatory or mitigating circumstances. *Wilson* indicates however that a trial court's discretionary exercise of its summary contempt powers in the face of a refusal to testify is not to be easily disturbed. 421 U.S. at 315, 319, 95 S.Ct. 1802. On the first of these contentions, we decline to accept defendant's invitation to review the appropriateness of summary action in light of the significance of the evidence withheld, since the actual obstructive effect of the withholding of testimony will rarely become apparent until the end of trial. *See* Kuhns,

*The Summary Contempt Power: A Critique and a New Perspective*, 88 Yale L.J. 39, at 109 (1978). We similarly reject the second. Where, as here, a recalcitrant witness gives absolutely no indication of the existence of exculpatory or mitigating circumstances underlying his refusal, a trial judge's exercise of his Rule 42(a) powers must be sustained.[2] Furthermore the record clearly shows that the defendant suffered no confusion,[3] but was fully apprised beforehand of the consequences of his contemplated disobedience. Finally, as in *Wilson*, time was of the essence, and there was a "compelling reason for an immediate remedy." Defendant was called as the government's next to last witness in a one-day trial. Obviously a citation for civil contempt would be a useless remedy in the case of an incarcerated witness called upon to testify in such a brief trial. For this reason the court in *Wilson* explicitly recognized that the threat of immediate and definite punishment might be necessary to obviate an obstruction of justice. 421 U.S. at 316, 95 S.Ct. 1802. A Rule 42(b) hearing would obviously not serve such a legitimate coercive purpose since it would not only require an impractical interruption and delay of trial, but would also offer the witness little threat of either immediate or certain punishment for his contempt.

■ Defendant's contention that summary adjudication and punishment deprived him of his right to a jury trial is equally without merit. The Supreme Court has expressly held that criminal contempt sentences of up to six months may constitutionally be imposed without a jury trial. *See Muniz v. Hoffman*, 422 U.S. 454, 476, 95 S.Ct. 2178, 45 L.Ed.2d 319 (1975); *Taylor v. Hayes*, 418 U.S. 488, 495–96, 94 S.Ct. 2697, 41 L.Ed.2d 897 (1974); *Frank v. United*

2. *Wilson* contains a suggestion that inquiry into mitigating or exculpating circumstances may sometimes be appropriate. 421 U.S. at 319, 95 S.Ct. 1802; *and see United States v. Brannon*, 546 F.2d 1242, 1248 (5th Cir. 1977); but that must certainly arise only upon some overt indication that such circumstances may exist. Here every opportunity was given to

suggest them. *Cf. Panico v. United States*, 375 U.S. 29, 84 S.Ct. 19, 11 L.Ed.2d 1 (1963).

3. Defendant suggests that his post-sentencing request that he be allowed to ask a question of the court indicated his confusion. This is not supported by the record. Prior to summary adjudication he indicated that he fully understood the consequences of his refusal to testify.

*States*, 395 U.S. 147, 89 S.Ct. 1503, 23 L.Ed.2d 162 (1969); *Cheff v. Schnackenberg*, 384 U.S. 373, 86 S.Ct. 1523, 16 L.Ed.2d 629 (1966). The fact that the contempt sentence is made to run consecutively to a prior sentence, thus possibly affecting a defendant's chances for parole, is irrelevant. This is evident from *Wilson* itself, where the Court affirmed the summary imposition of six-month sentences appended to terms the witnesses were already serving; *and see Codispoti v. Pennsylvania*, 418 U.S. 506, 94 S.Ct. 2687, 41 L.Ed.2d 912 (1974).

*AFFIRMED.*