In re Robert T. GUSTAFSON, Esquire

No. 78–3732.

United States Court of Appeals,
Ninth Circuit.

Submitted Jan. 15, 1981.

Decided June 25, 1981.

Robert T. Gustafson, Chula Vista, Cal., for appellant.

Judith S. Feigin, Asst. U.S. Atty., San Diego, Cal. (on the brief), Michael H. Walsh, U.S. Atty., Judith S. Feigin, Asst. U.S. Atty. (argued), San Diego, Cal., for appellee.

Before BROWNING, WRIGHT, GOODWIN, WALLACE, SNEED, HUG, SCHROEDER, FLETCHER, FARRIS, BOOCHEVER and NORRIS, Circuit Judges.

FARRIS, Circuit Judge:

Robert T. Gustafson appeals a summary contempt order entered against him by the district court. A divided panel of this court reversed. *See* 619 F.2d 1354 (9th Cir. 1980). Because proper resolution of the principal issue presented—the conditions under which a federal court may summarily impose criminal contempt—is important to just and orderly administration of the courts in the fifteen districts embraced by this circuit, we granted rehearing by this limited en banc panel, *see* 9th Cir.R. 25. We now affirm.

## I. GUSTAFSON'S CONDUCT

Gustafson represented one of six criminal defendants charged with conspiring to smuggle aliens. On December 6, 1978, after more than twelve days of jury trial, closing arguments began. Gustafson, representing the first defendant to argue, read his pre-sentation from a prepared text. He read it so fast that the trial judge or the court reporter requested that he repeat words or slow down at least nineteen times. On some of these occasions, he continued at so rapid a pace that he was almost immediately cautioned again. After it became apparent that Gustafson could not be slowed down, the trial judge stopped the court reporter and relied solely on a tape recording for transcription.

After Gustafson summarized the evidence, he began his conclusion, still reading from his prepared text. The prosecution made a series of objections to Gustafson's line of argument, arguing principally that he was seeking the jury's sympathy and that he was leading the jury to believe that it would be asked to impose punishment on the defendants. These objections were all sustained. On several occasions Gustafson's response to these objections was to pause, skip the remainder of the offending sentence, and return to his prepared text.[1] Several times his line of argument continued and another objection on the same grounds was almost immediately made and sustained.

At the close of Gustafson's argument, the following exchange occurred:

[GUSTAFSON]: Now I must close, but before I do, I want you to know that Julio Zamora feels strongly about this case and his prayers have been that you will render a just and merciful verdict. For his wife and his children, too—

MRS. WITTMAN: Objection, your honor—

THE COURT: Mr. Gustafson—you cannot, ladies and gentlemen, base a verdict based on any sympathy whatsoever. The case, and the verdict you render must be based on the facts and only the facts, nothing else.

MR. GUSTAFSON: I was just trying to say, your honor, and I'd like to have a ruling on it—for his wife and his two children, too—

---

1. Because of a delay in transcription of the trial proceedings, Gustafson submitted his podium text as an exhibit under Federal Rule of Appellate Procedure 10(c). The trial transcript was subsequently filed with this court. Gustafson's responses to objections can be determined by comparing the transcript with the podium text.

MRS. WITTMAN: Same objection, your honor.

THE COURT: That has nothing to do with it. His wife, his two children, nothing. It's the facts of the case.

MR. GUSTAFSON: Thank you. Ladies and gentlemen of the jury, I have just presented you, or you have been presented, with an example of the operation between the bench and the prosecutor in quashing and quelling this evidence of a defense counsel trying to do his level best for his client, and I am going to have to rely upon you to give him every benefit of every doubt to my client, despite those efforts.

Thank you, and I hope you have a Merry Christmas.

Following Gustafson's final remark, the court excused the jury and recessed the trial for the day. After the jury left the courtroom, the court summarily held Gustafson in contempt and imposed a fine of $250. Gustafson paid the fine. At the beginning of the next day, counsel for all the remaining defendants moved for a mistrial, contending that Gustafson's argument had "hopelessly alienated" the jury against their clients. The motion was denied. We upheld that denial in *United States v. Ayala-Ayala*, 610 F.2d 822 (9th Cir. 1979) (mem.); *United States v. Ayala-Carapia*, 610 F.2d 822 (9th Cir. 1979) (mem.), *cert. denied*, 444 U.S. 1089, 100 S.Ct. 1051, 62 L.Ed.2d 776 (1980); and *United States v. Carapia*, 610 F.2d 823 (9th Cir. 1979) (mem.).

The district judge prepared a certificate of contempt stating that he had seen and heard courtroom misconduct by Gustafson. *See generally* Fed.R.Crim.P. 42(a). The certificate provides in part:

I find that the [misconduct] constituted contempt of this court and was of such an accusatory nature as to directly affront the decorum and dignity of the United States District Court. I firmly believe that if this court cannot require those who are in its courtroom to obey the court, and if this court is required to sit idly by when accusations of misconduct

and conspiracy are made by defense counsel in closing argument without any basis whatsoever, this court would lose any control it has over the participants in a trial as well as the courtroom in general. Such behavior, such misconduct will not be tolerated by the court, and under the circumstances. I do not think it should be tolerated by any court.

Accordingly, I adjudge that attorney Robert T. Gustafson is guilty of criminal contempt as described below. I further state that a reading of this record cannot and does not adequately reflect the true intensity of the hostility and discourteousness displayed by this attorney during his closing argument to the jury in the above entitled case all in the court's presence.

The certificate then describes the particulars of Gustafson's disobedience to the court's rulings and his closing allegation of judicial misconduct. It continues:

I further find that summary vindication for said misbehavior in the actual presence of five other defense counsel and two prosecutors left the court no alternative but to summarily punish said attorney by the imposition of a fine of $250.00 or three days in jail.

Gustafson appeals, contending that his conduct was not contemptuous and that, even if it was contemptuous, the district court improperly used a summary procedure to find him in contempt. The United States disputes both contentions. The panel avoided ruling on the contemptuousness of the conduct, holding that summary adjudication of contempt was inappropriate.

## II. CONTEMPTUOUSNESS OF GUSTAFSON'S CONDUCT

Section 401 of the Criminal Code provides:

A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as—

(1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice;

(2) Misbehavior of any of its officers in their official transactions;

(3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.

18 U.S.C. § 401 (1976). Because lawyers are not court "officers" within the meaning of section 401(2), *Cammer v. United States*, 350 U.S. 399, 404–05, 76 S.Ct. 456, 458–59, 100 L.Ed. 474 (1956), only the first category of conduct is at issue here. This category is limited to behavior that in some manner "actually obstruct[s] the district judge in 'the performance of judicial duty.'" *In re McConnell*, 370 U.S. 230, 234, 82 S.Ct. 1288, 1291, 8 L.Ed.2d 434 (1962) (quoting *Ex parte Hudgings*, 249 U.S. 378, 383, 39 S.Ct. 337, 339, 63 L.Ed. 656 (1919)) (summary exercise of § 401(1) power). Moreover, to be punishable as criminal contempt, the misbehavior must be willful. *United States v. Powers*, 629 F.2d 619, 627 (9th Cir. 1980); *In re Farquhar*, 492 F.2d 561, 564 (D.C.Cir. 1973); *see also United States v. Marx*, 553 F.2d 874, 876 (4th Cir. 1977) (§ 401(3) contempt); *In re Floersheim*, 316 F.2d 423, 428 (9th Cir. 1963) (same).

■ Tested against this standard, Gustafson's behavior was contemptuous. He repeatedly ignored objections sustained by the court to the speed and content of his argument. He disregarded the judge's instructions as to permissible argument. Although he attempts to rationalize his behavior by collaterally challenging the judge's rulings, his remedy for error by the district judge was by mandamus or appeal from final judgment in the case being tried, not by disobedience. *Sacher v. United States*, 343 U.S. 1, 9, 72 S.Ct. 451, 455, 96 L.Ed. 717 (1952). The judge acted in the performance of his judicial duty to ensure an unbiased jury and an accurate record. Where, as here, an attorney disobeys the court's rulings and instructions, he or she commits "misbehavior" within the meaning of section 401(1). *See Pennsylvania v. Local 542*, 552 F.2d 498, 509 (3d Cir.) ("We have not the slightest doubt that flouting a trial judge's commands is the essence of obstructing the administration of justice."), *cert. denied*, 434 U.S. 822, 98 S.Ct. 67, 54 L.Ed.2d 79 (1977); *United States v. Seale*, 461 F.2d 345, 371 (7th Cir. 1972) ("The unmistakable implication of [*In re McConnell*, 370 U.S. 230, 82 S.Ct. 1288, 8 L.Ed.2d 434 (1962),] is that defiance of the court's order to cease questioning would have actually obstructed the proceedings."); *see also United States v. Afflerbach*, 547 F.2d 522, 525 (10th Cir. 1976), *cert. denied*, 429 U.S. 1098, 97 S.Ct. 1118, 51 L.Ed.2d 546 (1977); *In re Dellinger*, 461 F.2d 389, 399 (7th Cir. 1972).

Moreover, at least some of Gustafson's disobedience was willful beyond a reasonable doubt. Considering only his persistently rapid pace, it is difficult to quell reasonable doubts that Gustafson intended to disobey. His pace, however, was not his only disobedience. When his persistent argument on prohibited topics is also considered, an unmistakable pattern of deliberate disobedience emerges. The record satisfies us that the district court properly found beyond a reasonable doubt that Gustafson acted willfully.

■ Gustafson's closing remark was also contemptuous. He asserted that the judge had conspired with the prosecution to destroy his client's case. His assertion was made to the jury and in the presence of spectators and counsel. This charge of judicial bias inherently obstructed the judicial function by undermining the court's ability to regulate trial. It was plainly contemptuous. *See Barnes v. United States*, 241 F.2d 252, 254 (9th Cir. 1956) (dictum) ("Any lawyer would know that a charge made to a judge in open court that the judge had made up his mind before the case started . . . was flagrant contempt of court."); *see also In re Buckley*, 10 Cal.3d 237, 248–49, 255, 514 P.2d 1201, 1207–08, 1213, 110 Cal. Rptr. 121, 127–28, 133 (1973), *cert. denied*, 418 U.S. 910, 94 S.Ct. 3202, 41 L.Ed.2d 1156 (1974); *Hume v. Superior Court*, 17 Cal.2d 506, 513, 110 P.2d 669, 673–74 (1941); *Alexander v. Sharpe*, 245 A.2d 279, 281, 283–84 (Me.1968).

## III. APPROPRIATENESS OF SUMMARY PROCEDURE

Federal Rule of Criminal Procedure 42, which governs the method of adjudicating criminal contempt, provides:

(a) Summary Disposition. A criminal contempt may be punished summarily if the judge certifies that he saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court. The order of contempt shall recite the facts and shall be signed by the judge and entered of record.

(b) Disposition upon Notice and Hearing. A criminal contempt except as provided in subdivision (a) of this rule shall be prosecuted on notice. The notice shall state the time and place of hearing, allowing a reasonable time for the preparation of the defense, and shall state the essential facts constituting the criminal contempt charged and describe it as such. The notice shall be given orally by the judge in open court in the presence of the defendant or, on application of the United States attorney or of an attorney appointed by the court for that purpose, by an order to show cause or an order of arrest. The defendant is entitled to a trial by jury in any case in which an act of Congress so provides. He is entitled to admission to bail as provided in these rules. If the contempt charged involves disrespect to or criticism of a judge, that judge is disqualified from presiding at the trial or hearing except with the defendant's consent. Upon a verdict or finding of guilt the court shall enter an order fixing the punishment.

The certificate prepared by the district judge here meets the two requirements explicitly set forth in Rule 42(a). The principal issues in this case are whether there are other prerequisites to summary adjudication of contempt and, if so, whether they were met here.

In *United States v. Wilson*, 421 U.S. 309, 95 S.Ct. 1802, 44 L.Ed.2d 186 (1975), the Supreme Court upheld a district court's summary contempt order directed against two witnesses who refused to testify when ordered to do so by the trial judge. The Court began its analysis by noting that the requirements of Rule 42(a) were met:

Respondents' refusals to answer, although not delivered disrespectfully, plainly fall within the express language of Rule 42(a), and constitute contemptuous conduct. Rule 42(a) was never intended to be limited to situations where a witness uses scurrilous language, or threatens or creates overt physical disorder and thereby disrupts a trial. All that is necessary is that the judge certify that he "saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court." Respondents do not contest that these requirements are met here.

*Id.* at 314–15, 95 S.Ct. at 1805 (footnotes omitted). After concluding that the witnesses' acts were intentional and obstructed the judicial duty, *id.* at 315–16 & n. 7, 95 S.Ct. at 1806 & n. 7, the Supreme Court held that summary adjudication was proper:

The face-to-face refusal to comply with the court's order itself constituted an affront to the court, and when that kind of refusal disrupts and frustrates an ongoing proceeding, as it did here, summary contempt must be available to vindicate the authority of the court as well as to provide the recalcitrant witness with some incentive to testify. Whether such incentive is necessary in a particular case is a matter the Rule wisely leaves to the discretion of the trial court.

*Id.* at 316–17, 95 S.Ct. at 1806–07 (citation and footnote omitted).

■ Under *Wilson*, the only absolute prerequisites to summary punishment of contempt are the requirements in Rule 42(a) that the contemptuous behavior be seen or heard by the judge and be committed in the actual presence of the court. When these requirements are satisfied, the trial court is empowered, in its discretion, to invoke summary procedures. This discretionary power is not to be exercised by the district court except in limited circumstances after dispassionate consideration.

After holding that summary contempt was appropriate, the Court in *Wilson* distinguished the case before it from *Harris v. United States*, 382 U.S. 162, 86 S.Ct. 352, 15

L.Ed.2d 240 (1965). In *Harris*, a witness before a grand jury refused to answer certain questions after a grant of immunity. The witness was then brought before a district court judge and summarily held in contempt for refusing to answer the same questions. In *Wilson*, the Court noted that, when confronted by the refusal to testify, the grand jury in *Harris* could "rather easily suspend action on any one [inquiry], and turn to another while [plenary contempt] proceedings under Rule 42(b) are completed." 421 U.S. at 318, 95 S.Ct. at 1807. In contrast, the Court deemed refusal of a trial witness to testify a much more serious threat to orderly procedure. *Id.* at 319, 95 S.Ct. at 1808. Thus, the *Wilson* Court considered the need for immediate action to be a crucial factor in distinguishing *Harris*. The Court's summary of its holding in *Wilson* reflects the importance of this factor in the trial court's discretionary determination of the propriety of summary punishment:

> In an ongoing trial, with the judge, jurors, counsel, and witnesses all waiting, Rule 42(a) provides an appropriate remedial tool to discourage witnesses from contumacious refusals to comply with lawful orders essential to prevent a breakdown of the proceedings. Where time is not of the essence, however, the provisions of Rule 42(b) may be more appropriate to deal with contemptuous conduct. We adhere to the principle that only " '[t]he least possible power adequate to the end proposed' " should be used in contempt cases.

*Id.*

■■■ We review the trial court's decision to invoke summary contempt procedures, including its consideration of the need for immediate action, for an abuse of discretion:

> As with all power, the authority under Rule 42(a) to punish summarily can be abused; the courts of appeals, however, can deal with abuses of discretion without restricting the Rule in contradiction of its express terms, and without unduly limiting the power of the trial judge to act swiftly and firmly to prevent contumacious conduct from disrupting the orderly progress of a criminal trial.

*Id.* We review for such abuse of discretion in light of the fundamental principles underlying the contempt power. "Rule 42(a) was reserved 'for exceptional circumstances,' " *Harris v. United States*, 382 U.S. at 164, 86 S.Ct. at 353 (quoting *Brown v. United States*, 359 U.S. 41, 54, 79 S.Ct. 539, 548, 3 L.Ed.2d 609 (1959)). The rule is to be applied when the contemnor's conduct is "such an open, serious threat to orderly procedure that instant and summary punishment, as distinguished from due and deliberate procedures . . ., [is] necessary." *Harris v. United States*, 382 U.S. at 165, 86 S.Ct. at 354 (citation omitted). Rule 42(b) is to be applied "except [in] those unusual situations envisioned by Rule 42(a) where instant action is necessary to protect the judicial institution itself." *Id.* at 167, 86 S.Ct. at 355.

Summary contempt proceedings are unique to criminal procedure: the otherwise inconsistent functions of prosecutor, jury, and judge are united in one individual. Courts have long noted the manifest potential for abuse. *E. g., Bloom v. Illinois*, 391 U.S. 194, 202, 88 S.Ct. 1477, 1484, 20 L.Ed.2d 522 (1968); *Ex parte Terry*, 128 U.S. 289, 313, 9 S.Ct. 77, 82, 32 L.Ed. 405 (1888). Where courtroom misconduct carries special personal insult to the trial judge, we are watchful for distortion of the judge's sound discretion.

Moreover, summary contempt dispenses with the usual guarantees of notice and hearing. *Groppi v. Leslie*, 404 U.S. 496, 502, 92 S.Ct. 582, 586, 30 L.Ed.2d 632 (1972). We therefore must take special care to ensure that trial judges invoke summary contempt only with careful consideration and good reason.

On the other hand, we recognize that the determination to impose summary contempt, assuming that the requirements are met, is wisely left primarily to the trial judge. *See Wilson*, 421 U.S. at 316–17, 95 S.Ct. at 1806–07. Trials are by their nature contentious. *See generally Sacher v. United States*, 343 U.S. 1, 8, 72 S.Ct. 451, 454, 96

L.Ed. 717 (1952). As contention begins to develop into disobedience or disorder, the trial court is in the best position to judge whether there exists a need for immediate penal vindication of the dignity and authority of the court. In carrying out their heavy responsibility of ensuring fair trial, district judges must have the ability to quickly and authoritatively act to halt incipient disorder.

Where the record demonstrates that the trial judge did not fully consider the relative appropriateness of summary and plenary adjudication of contempt, we must independently evaluate the need for summary procedures. At the same time, we give great deference to a trial judge's explicit determination that plenary procedures are inadequate and summary procedures are necessary.

■ Here, the trial judge realized that summary contempt is only appropriate when needed to promote the judicial function. He specifically found that the misbehavior left him no alternative but to summarily punish. This finding is supported by both the record and the circumstances. Throughout his closing argument, Gustafson had openly disregarded the Court's rulings and directives. He had just closed that argument with a charge of judicial bias. Although the day's proceedings had concluded, counsel for five codefendants had yet to give their closing arguments, the prosecution had yet to give its rebuttal, and the judge had yet to instruct the jury. Gustafson's contempt, if left unpunished, might have spawned other misconduct. This provides a sound basis for the immediate and temperate action that was taken by the court here.

■ The fact that the district judge excused the jury before imposing contempt does not render summary action inappropriate. Exercise of the summary contempt power need not be immediate. See Pennsylvania v. Local 542, 552 F.2d 498, 512–14 (3d Cir.), cert. denied, 434 U.S. 822, 98 S.Ct. 67, 54 L.Ed.2d 79 (1977); MacInnis v. United States, 191 F.2d 157 (9th Cir. 1951), cert. denied, 342 U.S. 953 (1952); Hallinan v.

United States, 182 F.2d 880 (9th Cir. 1950), cert. denied, 341 U.S. 952, 71 S.Ct. 1010, 95 L.Ed. 1375 (1951). The avoidance of further jury bias against Gustafson's client was a good reason for the brief delay. Further, the delay did not prevent the summary adjudication from deterring further contempt by Gustafson or the other counsel. When trial continued the next morning, proper decorum had been reestablished.

The opinion of the panel filed on May 30, 1980, is withdrawn and the judgment of the district court is affirmed.

BOOCHEVER, Circuit Judge, with whom HUG, SCHROEDER, FLETCHER and NORRIS, Circuit Judges join, dissenting:

I respectfully dissent because: I differ with the majority's (1) elimination of an exigency prerequisite for dispensing with the basic due process requirements of notice and opportunity to be heard before an adjudication of contempt; (2) characterization of the trial court's decision to dispense with those due process requirements as discretionary; and (3) standard of reviewing such a decision based on abuse of discretion. Additionally, I believe that the certificate judging Gustafson in contempt fails to set forth any reason mandating summary adjudication, and that there were no exceptional circumstances in this case to justify dispensing with notice and opportunity to be heard.

## I. FACTS

Gustafson, a retired Naval Judge Advocate, was appointed to represent one of several defendants in a complex conspiracy case. He presented his closing argument from a prepared text, which he read so fast that the court reporter and the district judge repeatedly requested him to slow down. Gustafson also referred to his client's wife and children several times, despite prosecution objections, and warnings from the court that jury sympathy for the defendant could play no role in the jury's deliberations. After the court sustained several prosecution objections, Gustafson concluded his argument by stating:

Thank you. Ladies and gentlemen of the jury, I have just presented you, or you have been presented, with an example of the operation between the bench and the prosecutor in quashing and quelling this evidence of a defense counsel trying to do his level best for his client, and I am going to have to rely upon you to give him every benefit of every doubt to my client, despite those efforts.

Thank you, and I hope you have a Merry Christmas.

At this point the court excused the jury, recessed trial for the day, ordered Gustafson to come forward and summarily held him in contempt, stating:

THE COURT: By reason of the remarks made in your argument relative to the court and to the prosecution, you are hereby held in contempt of court and fined $250. You are to make that payment by 5:00 o'clock tomorrow. And unless you do, you will be incarcerated for three days.

Gustafson immediately apologized to the court.

As required by Federal Rule of Criminal Procedure 42(a), the district judge prepared a certificate of contempt which was filed eleven days later. The material portions of the certificate are set forth in the majority opinion. The certificate contained only one sentence referring to the need for summary adjudication, as follows:

I further find that summary vindication for said misbehavior in the actual presence of five other defense counsel and two prosecutors left the court no alternative but to summarily punish said

attorney by the imposition of a fine of $250.00 or three days in jail.

Gustafson raises two arguments on appeal. He contends first, that his conduct was not contemptuous, and second, that the district court improperly relied on the summary procedure in Rule 42(a) to find him in contempt. I would hold that the summary procedure was inappropriate in this case, and would not reach the issue of whether Gustafson's conduct was in fact contemptuous under 18 U.S.C. § 401.

## II. THE PREREQUISITES FOR EXERCISE OF SUMMARY CONTEMPT POWERS

The summary contempt power is unlike other criminal proceedings. Federal courts have the inherent power to preserve order and decorum in court proceedings.[1] *Ex parte Terry*, 128 U.S. 289, 303, 9 S.Ct. 77, 79, 32 L.Ed. 405 (1888). It has long been recognized that because the contempt power combines in one individual or body the functions of judge, prosecutor and jury, contempt citations are limited to "the least possible power adequate to the end proposed." *Anderson v. Dunn*, 19 U.S. (6 Wheat. 204, 231), 5 L.Ed. 242 (1821); *United States v. Abascal*, 509 F.2d 752, 756 (9th Cir.), *cert. denied*, 422 U.S. 1027, 95 S.Ct. 2621, 45 L.Ed.2d 684 (1975). The substantive basis for the contempt citation issued to Gustafson is 18 U.S.C. § 401(1), which empowers a federal court to punish by fine or imprisonment "[m]isbehavior of any person in its presence or so near thereto as to obstruct the administration of justice."[2]

---

1. *But see* Comment, *Counsel and Contempt: A Suggestion that the Summary Power be Eliminated*, 18 Duq.L.R. 289 (1980) (arguing that summary contempt is not an inherent judicial power, and should be eliminated as violative of due process rights).

2. 18 U.S.C. § 401 provides in full:
A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as—
(1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice;

(2) Misbehavior of any of its officers in their official transactions;
(3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.
There is no statutory limit on the sentence imposed for criminal contempt. Punishment by the summary procedure in Federal Rule of Criminal Procedure 42(a), however, is limited to a six-month prison term because of the constitutional right to a jury trial for "serious crimes." *Bloom v. Illinois*, 391 U.S. 194, 210–11 (1968). *See United States v. Marthaler*, 571 F.2d 1104, 1105 (9th Cir. 1978).

The question in this appeal is whether the district court properly resorted to the summary procedure in Federal Rule of Criminal Procedure 42(a) to find Gustafson in contempt.

On the face of Rule 42(a), the only prerequisites for a summary contempt citation are that the judge see or hear the contempt and that it be committed in the presence of the court.[3] Judicial interpretations of the rule, however, indicate that something more is required. Rule 42(a) may only be invoked in "exceptional circumstances." *Harris v. United States*, 382 U.S. 162, 164, 86 S.Ct. 352, 353, 15 L.Ed.2d 240 (1965). In our own circuit we have twice noted that the punishment of contempts under Rule 42(a) is narrowly limited. *United States v. Powers*, 629 F.2d 619, 625 (9th Cir. 1980); *United States v. Abascal*, 509 F.2d 752, 755 (9th Cir.), *cert. denied*, 422 U.S. 1027, 95 S.Ct. 2621, 45 L.Ed.2d 684 (1975). The courts, however, have not been entirely clear in formulating a heightened standard. *See Harris*, 382 U.S. at 165, 86 S.Ct. at 354 ("serious threat to orderly procedure"); *In re Chaplain*, 621 F.2d 1272, 1275 (4th Cir.) (en banc), *cert. denied*, —— U.S. ——, 101 S.Ct. 106, 66 L.Ed.2d 40 (1980) ("immediate action is required to preserve order"); *Abascal*, 509 F.2d at 756 ("immediate punishment is essential to prevent 'demoralization of the court's authority' "). *See also* 3 C. Wright, *Federal Practice and Procedure: Criminal* § 707, at 165 (1969).

The basis for limiting Rule 42(a) beyond its literal language is the due process clause of the fifth amendment of the United States Constitution. Even a minimal fine imposed for contempt is a deprivation of property, and 18 U.S.C. § 401 authorizes imprisonment as well.[4] Additionally, a contempt citation against a lawyer, as occurred here, can create serious long-term professional problems for the attorney, whose moral fitness to practice law may be drawn into question. *See Ramirez v. State Bar of California*, 28 Cal.3d 402, 619 P.2d 399, 169 Cal.Rptr. 206 (1980); ABA Code of Professional Responsibility, Disciplinary Rule 7–106(C)(6). Although the concept of what process is required in a given situation is flexible, the fundamental requirements of prior notice and hearing are almost invariably mandated. *Groppi v. Leslie*, 404 U.S. 496, 502, 92 S.Ct. 582, 586, 30 L.Ed.2d 632 (1972); L. Tribe, *American Constitutional Law* 512, 544–54 (1978).

The Supreme Court has imposed procedural due process requirements in a number of civil situations where liberty or property interests are implicated.[5] These require-

---

The Supreme Court has held that attorneys are not "officers" within the meaning of § 401(2). *Cammer v. United States*, 350 U.S. 399, 404–05, 76 S.Ct. 456, 458–59, 100 L.Ed. 474 (1956). Therefore Gustafson's conduct is governed by § 401(1).

3. Rule 42 provides:

(a) *Summary Disposition.* A criminal contempt may be punished summarily if the judge certifies that he saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court. The order of contempt shall recite the facts and shall be signed by the judge and entered of record.

(b) *Disposition upon Notice and Hearing.* A criminal contempt except as provided in subdivision (a) of this rule shall be prosecuted on notice. The notice shall state the time and place of hearing, allowing a reasonable time for the preparation of the defense, and shall state the essential facts constituting the criminal contempt charged and describe it as such. The notice shall be given orally by the judge in open court in the presence of the defendant or, on application of the United States attorney or of an attorney appointed by the court for that purpose, by an order to show cause or an order to arrest. The defendant is entitled to a trial by jury in any case in which an act of Congress so provides. He is entitled to admission to bail as provided in these rules. If the contempt charged involves disrespect to or criticism of a judge, that judge is disqualified from presiding at the trial or hearing except with the defendant's consent. Upon a verdict or finding of guilt the court shall enter an order fixing the punishment.

4. *See* note 2, *supra*.

5. In *Goldberg v. Kelly*, 397 U.S. 254, 264, 90 S.Ct. 1011, 1018, 25 L.Ed.2d 287 (1970), the Court held that a state could not terminate welfare payments without providing an evidentiary hearing prior to terminating the benefits. The Court recognized that its holding would increase state expense and delay, but reasoned that the balance favored the individual "in the

ments are even more clearly applicable to criminal proceedings where more serious deprivations are potentially involved. It is thus not surprising that the Supreme Court has consistently recognized that due process is a fundamental limitation on the power of summary contempt.[6] Shortly after Rule 42(a) took effect, the Court held that the Constitution limited the use of summary contempt to situations where "immediate punishment is essential to prevent 'demoralizaiton of the court's authority' before the public." *In re Oliver*, 333 U.S. 257, 275, 68 S.Ct. 499, 508, 92 L.Ed. 682 (1948) (quoting *Cooke v. United States*, 267 U.S. 517, 536, 45 S.Ct. 390, 394, 69 L.Ed. 767 (1925)). Since *Oliver*, the Court has reinforced this due process limitation by restricting summary contempt to exceptional circumstances. *United States v. Wilson*, 421 U.S. 309, 319, 95 S.Ct. 1802, 1808, 44 L.Ed.2d 186 (1975); *Taylor v. Hayes*, 418 U.S. 488, 498, 94 S.Ct. 2697, 2703, 41 L.Ed.2d 897 (1974); *Groppi v. Leslie*, 404 U.S. 496, 502–03, 92 S.Ct. 582, 586–87, 30 L.Ed.2d 632 (1972); *Sacher v. United States*, 343 U.S. 1, 8, 72 S.Ct. 451, 454, 96 L.Ed. 717 (1952).

The cases of *Harris v. United States*, 382 U.S. 162, 86 S.Ct. 352, 15 L.Ed.2d 240 (1965) and *United States v. Wilson*, 421 U.S. 309, 95 S.Ct. 1802, 44 L.Ed.2d 186 (1975), demonstrate the applicable criteria in determining the procedure to be followed. In *Harris*, a grand jury witness refused to answer certain questions. He was brought before the district judge, who advised him that he would receive immunity from prosecution and ordered him to answer the questions. Upon the witness' refusal he was summarily found guilty of contempt under Rule 42(a). In reversing, the Court stated that:

welfare context." *Id.* at 266, 90 S.Ct. at 1019. Similarly, the Court has held that prior notice and hearing are constitutional prerequisites to pre-judgment garnishment of wages, *Sniadach v. Family Finance Corp.*, 395 U.S. 337, 342, 89 S.Ct. 1820, 1823, 23 L.Ed.2d 349 (1969), the revocation of a prisoner's "good time" credits, *Wolff v. McDonnell*, 418 U.S. 539, 558, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974), and the cutoff of public utility service for non-payment of disputed bills. *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 15, 98 S.Ct. 1554, 1563, 56 L.Ed.2d 30 (1978). *But see Mitchell v. W. T. Grant Co.*, 416 U.S. 600, 611–20, 94 S.Ct.

Rule 42(a) [is] reserved "for exceptional circumstances," *Brown v. United States*, 359 U.S. 41, 54 [79 S.Ct. 539, 548, 3 L.Ed.2d 609] (dissenting opinion), such as acts threatening the judge or disrupting a hearing or obstructing court proceedings. *Ibid.* We reach that conclusion in light of "the concern long demonstrated by both Congress and this Court over the possible abuse of the contempt power", *ibid.*, and in light of the wording of the Rule.

382 U.S. at 164, 86 S.Ct. at 354. The Court also stated that:

swiftness [is] not a prerequisite of justice here. Delay necessary for a hearing would not imperil the grand jury proceedings.

*Id.*

In contrast, the Court in *Wilson* was confronted with two witnesses in an ongoing trial who refused to testify after being granted immunity. In upholding summary contempt application, the Court noted that the refusals to answer were "intentional obstructions of court proceedings that literally disrupted the progress of the trial and hence the orderly administration of justice." 421 U.S. at 315–16, 95 S.Ct. at 1806 (footnote omitted). *Harris* was carefully distinguished. "The crucial difference between the cases . . . is that *Harris* did not deal with a refusal to testify which obstructed an ongoing trial." *Id.* at 318, 95 S.Ct. at 1807. The Court concluded by stating:

Where time is not of the essence, however, the provisions of Rule 42(b) may be more appropriate to deal with contemptu-

1895, 1902–06, 40 L.Ed.2d 406 (1974) (notice and hearing not required prior to property sequestration where state statute required bond and judicial action).

6. The constitutionality of Rule 42(a) is settled. *See Sacher v. United States*, 343 U.S. 1, 7–8, 72 S.Ct. 451, 454–55, 96 L.Ed. 717 (1952); *Fisher v. Pace*, 336 U.S. 155, 159–60, 69 S.Ct. 425, 427–428, 93 L.Ed. 569 (1949). This does not alter the requirement that summary procedures should be narrowly limited to exceptional situations.

ous conduct. We adhere to the principle that only " '[t]he least possible power adequate to the end proposed' " should be used in contempt cases. *Anderson v. Dunn,* 6 Wheat. 204, 231, 5 L.Ed. 242 (1821). See *Taylor v. Hayes,* 418 U.S. 488, 498 [94 S.Ct. 2697, 2703, 41 L.Ed.2d 897] (1974).

*Id.* at 319, 95 S.Ct. 1808.[7]

In *Taylor v. Hayes,* 418 U.S. 488, 94 S.Ct. 2697, 41 L.Ed.2d 897 (1974), the principles enunciated in *Wilson* were applied to facts more closely akin to those of this case. The Court held that it was improper for the trial court to cite the contemnor during the trial, and then summarily punish him at the conclusion of trial. Relying on *Groppi v. Leslie,* 404 U.S. 496, 503–06 (1972), the *Taylor* Court reversed the contempt citation, stating that "before an attorney is finally adjudicated in contempt and sentenced after trial for conduct during trial, he should have reasonable notice of the specific charges and opportunity to be heard in his own behalf." 418 U.S. at 498–99, 94 S.Ct. at 2703–04. The Court explained that the hearing provides the contemnor a chance to justify his conduct, or at least mitigate punishment. The Court further noted that the necessity for summary contempt is not present when final adjudication is postponed until the trial is completed.

Professor Kuhns' exhaustive study of summary contempt gives cogent reasons for limiting the exercise of the power to situations of genuine necessity. Kuhns, *The Summary Contempt Power: A Critique and a New Perspective,* 88 Yale L.J. 39 (1978). In an extensive discussion of *United States v. Wilson,* the author concludes that the primary justification for summary contempt is its coercive impact, as in the case of a witness' refusal to testify. *Id.* at 92–113. Procedural due process, however, is required in all but the most compelling circumstances. Notably, a hearing gives the contemnor an opportunity to present a defense, the chance to conform his or her conduct after warnings, and the right of allocution, as well as affording the court an opportunity to determine the contemnor's intent. *Id.* at 45–66. Even a defendant convicted of the most heinous crime has the right to address the court prior to sentencing and thus apologize for or explain his or her conduct. *Id.* at 55–57; Fed.R.Crim.P. 32(a)(1). *See United States v. Brannon,* 546 F.2d 1242, 1249 (5th Cir. 1977). Gustafson was afforded no such right.

The Standards for Criminal Justice developed by the American Bar Association also recognize the due process limitations on summary procedure. Standard 6–4.4 of the Special Functions of the Trial Judge provides:

> Before imposing any punishment for criminal contempt, the judge should give the offender notice of the charges and at least a summary opportunity to adduce evidence or argument relevant to guilt or punishment.

*Commentary*

7. It is arguable that the distinction between *Wilson* and *Harris* is merely that the initial refusal to testify in *Harris* occurred outside the courtroom, while *Wilson* involved "direct contempt." Such an interpretation, however, renders much of the *Wilson* opinion superfluous. Sections III and IV of the majority opinion are devoted to demonstrating that there was no need for immediacy in *Harris,* but that there was a "serious threat to orderly procedure" in *Wilson.* 421 U.S. at 319. If the *Wilson* Court had relied solely on the "presence of the court" language in Rule 42(a), it would have been a simple matter to distinguish the two cases, but this was not the basis used.

Perhaps more importantly, the *Wilson* court reaffirmed the concept developed in a long line of Supreme Court cases, that summary contempt is an extraordinary remedy that must be narrowly limited. *See Taylor v. Hayes,* 418 U.S. 488, 498, 94 S.Ct. 2697, 2703, 41 L.Ed.2d 897 (1974); *Groppi v. Leslie,* 404 U.S. 496, 502–03, 92 S.Ct. 582, 586–87, 30 L.Ed.2d 632 (1972); *Harris v. United States,* 382 U.S. 162, 164, 86 S.Ct. 352, 353, 15 L.Ed.2d 240 (1965); *Sacher v. United States,* 343 U.S. 1, 8, 72 S.Ct. 451, 454, 96 L.Ed. 717 (1952); *In re Oliver,* 333 U.S. 257, 274–76, 68 S.Ct. 499, 508, 92 L.Ed. 682 (1948); *Cooke v. United States,* 267 U.S. 517, 536, 45 S.Ct. 390, 394, 69 L.Ed. 767 (1925); *Anderson v. Dunn,* 19 U.S. (6 Wheat. 204, 230–31, 5 L.Ed. 242) (1821). If the only difference between Rule 42(a) and 42(b) is whether the conduct occurred in the presence of the court, the due process limitations on summary contempt would be meaningless.

Although there is authority that in-court contempts can be punished without notice of charges or an opportunity to be heard, such a procedure has little to commend it, is inconsistent with the basic notions of fairness, and is likely to bring disrespect upon the court. Accordingly, notice and at least a brief opportunity to be heard should be afforded as a matter of course. Nothing in this standard, however, implies that a plenary trial of contempt charges is required.

*ABA Standards for Criminal Justice, Special Functions of the Trial Judge*, § 6–4.4 (2d ed. 1980) (footnote and citation omitted). This standard (numbered § 7.4 in the first edition) has been cited with approval by the Supreme Court, the Fifth Circuit and this circuit. *Taylor v. Hayes*, 418 U.S. 488, 499 n. 8, 94 S.Ct. 2697, 2703 n. 8, 41 L.Ed.2d 897 (1974); *Brannon*, 546 F.2d at 1249; *United States v. Abascal*, 509 F.2d 752, 755 n. 7 (9th Cir.), *cert. denied*, 422 U.S. 1027, 95 S.Ct. 2621, 45 L.Ed.2d 684 (1975).

Circuit court opinions since *Wilson* either implicitly or explicitly support a requirement of "compelling need" prior to summary contempt procedures.[8] In *United States v. Brannon*, 546 F.2d 1242 (5th Cir. 1977), the court reversed a summary contempt citation because it was issued after closing argument, and thus there was no compelling need for dispensing with due process.

The court placed strong weight on the *Wilson* Court's discussion of *Harris*, concluding:

> The teaching of *Wilson* is simply that Rule 42(a) is a rule of necessity and its application is "narrowly limited." It fills "the need for immediate penal vindication of the dignity of the court" and permits the court to act swiftly to stop conduct which amounts to intentional obstruction of court proceedings. Thus, the power to impose summary contempt exists only where there is "compelling reason for an immediate remedy," and where there is no such need its use is inappropriate.

*Id.* at 1248 (footnotes omitted). The court went on to find that time was not of the essence under the facts of the case, and therefore the district court should have proceeded under Rule 42(b).

The First Circuit reached a similar result interpreting the Bankruptcy Court summary contempt procedure, which directly follows 18 U.S.C. § 401 and Federal Rule of Criminal Procedure 42. *Fernos-Lopez v. United States District Court for the District of Puerto Rico*, 599 F.2d 1087, 1091–92 (1st Cir.), *cert. denied*, 444 U.S. 931, 100 S.Ct. 275, 62 L.Ed.2d 189 (1979). The court reversed a summary contempt citation issued for failure to follow court instructions, finding that the contemnor's conduct did not

---

**8.** In the Ninth Circuit we have not directly dealt with the issue since *Wilson*. The pre-*Wilson* cases indicate that this circuit limited Rule 42(a) to exceptional circumstances. Just prior to *Wilson*, this court held that in addition to the literal requirements of Rule 42(a), "it must appear also that 'immediate punishment is essential to prevent demoralization of the court's authority.'" *United States v. Abascal*, 509 F.2d 752, 756 (9th Cir.), *cert. denied*, 422 U.S. 1027, 95 S.Ct. 2621, 45 L.Ed.2d 684 (1975). *See also United States v. Marshall*, 451 F.2d 372, 374–75 (9th Cir. 1971).

More recently, we recognized that the contempt power is limited by due process, and therefore that Rule 42(a) must be narrowly limited. The basis of our contempt affirmance, however, was that the contemnor did have an opportunity to prepare a defense, and that the trial court's incorrect characterization of the contempt as "civil" was not prejudicial. *United States v. Powers*, 629 F.2d 619, 625–29 (9th Cir. 1980). In *Chapman v. Pacific Tel. & Tel. Co.*, 613 F.2d 193, 198 (9th Cir. 1979), we did

not reach the issue whether summary contempt was appropriate because we found compliance with the Rule 42(b) procedures. Finally, in *Hawk v. Cardoza*, 575 F.2d 732, 734 (9th Cir. 1978), we found that the contemnor was given an adequate opportunity to explain his conduct as each summary contempt citation was issued, therefore no further process was due at the conclusion of trial.

In *MacInnis v. United States*, 191 F.2d 157 (9th Cir. 1951), *cert. denied*, 342 U.S. 953, 72 S.Ct. 628, 96 L.Ed. 708 (1952), this court affirmed a summary contempt citation under Rule 42(a) where counsel accused the judge of misconduct. This court found that the contemnor's conduct was "a willful obstruction and disruption of the orderly conduct of the trial." *Id.* at 161. Thus the *MacInnis* case does not directly conflict with the approach endorsed by this dissent. The facts in *MacInnis*, however, do not indicate a necessity for summary action as I have defined it, and to that extent I disagree with *MacInnis*.

obstruct the proceedings or create "any imminent threat to the administration of justice." *Id.* at 1092. Relying exclusively on the Supreme Court's due process interpretations of Rule 42(a),[9] the court found summary contempt to be a constitutional violation in the absence of a threat to the proceedings. *See also Schleper v. Ford Motor Co.*, 585 F.2d 1367, 1371–72 (8th Cir. 1978) (summary citation for contemptuous answer to interrogatory is due process violation); *United States v. Marra*, 482 F.2d 1196, 1201–02 (2d Cir. 1973) (summary contempt requires an open threat to orderly court procedures).[10]

The majority gives lip service to the *Harris* and *Wilson* requirement that time be of the essence to justify summary proceedings. The opinion refers to "an open, serious, threat to orderly procedure", "need for immediate action" as a "crucial factor", "exceptional circumstances", "unusual situations . . . where instant action is necessary to protect the judicial institution itself." Yet somehow the need for such an exigency is deemed not to be a requirement but merely some type of basis for exercising discretion.

There either is or is not an exigency justifying summary action. There is no lee-way for the exercise of discretion in making such a determination. It is only when the substantial requirements for summary adjudication have been met that the court has discretion as to what contempt procedure to follow, if any.

Because of the potentially serious consequences of a contempt citation and the due process deprivations inherent in summary contempt procedure, I would hold that a third prerequisite for application of Rule 42(a) is a compelling need for immediate remedy. Specifically, the contemnor's conduct must represent an "open, serious threat"[11] to the orderly procedure of the trial such that notice and hearing pursuant to Rule 42(b) would substantially frustrate further prosecution of the case.[12]

## III. STANDARD OF REVIEW

There is little direct authority on the standard of review for evaluating a district court's summary contempt citation.[13] In the cases discussed above, where a summary

---

**9.** *See* cases cited in note 7 *supra.*

**10.** The Fourth Circuit affirmed a summary contempt citation issued to a pro se defendant who constantly interrupted and ignored the judge, refused to obey court orders, and badgered the witnesses. *In re Chaplain*, 621 F.2d 1272, 1275–77 (4th Cir.) (en banc) *cert. denied,* —— U.S. ——, 101 S.Ct. 106, 66 L.Ed.2d 40 (1980). The court found that in addition to contemptuous conduct committed in the presence of the judge, summary contempt is only appropriate "when immediate action is required to preserve order in the proceedings and appropriate respect for the tribunal." *Id.* at 1275. The contemnor's entire course of conduct made immediate action necessary. In several other cases, summary contempt has been upheld where there is a compelling need to coerce a recalcitrant witness. *See United States v. Wilson*, 421 U.S. 309, 95 S.Ct. 1802, 44 L.Ed.2d 186 (1975) (summary contempt appropriate to coerce witness testimony); *United States v. North*, 621 F.2d 1255, 1262–65 (3d Cir.) (en banc), *cert. denied,* —— U.S. ——, 101 S.Ct. 199, 66 L.Ed.2d 84 (1980) (witness refusal to testify justifies summary six month criminal contempt citation); *In re Scott*, 605 F.2d 736, 738 (4th Cir. 1979) (witness refusal to testify creates compelling reason justifying summary

contempt); *United States v. Mars*, 551 F.2d 711, 715 (6th Cir. 1977) (refusal to provide handwriting exemplar is an "exceptional circumstance" justifying summary contempt, but Rule 42(a) requires certificate).

**11.** *Harris v. United States*, 382 U.S. 162, 165, 86 S.Ct. 352, 354, 15 L.Ed.2d 340 (1965).

**12.** In the words of Chief Justice Burger, the contemnor's conduct "literally disrupted the progress of the trial." *United States v. Wilson*, 421 U.S. 309, 316, 95 S.Ct. 1801, 1806, 44 L.Ed.2d 186 (1975).

**13.** Our research has failed to reveal any federal case directly addressing the standard of review of a summary contempt procedure. The vast majority of contempt cases apply an abuse of discretion standard to sentencing. The imposition of a sentence for contempt is discretionary because 18 U.S.C. § 401 does not impose a limit. *Brown v. United States*, 359 U.S. 41, 52, 79 S.Ct. 539, 547, 3 L.Ed.2d 609 (1959); *United States v. Powers*, 629 F.2d 619, 624 (9th Cir. 1980). A few cases apply an abuse of discretion standard for determinations related to contempt, such as whether the contemptuous conduct required substitution of a new judge. *Nil-*

citation was reversed, the courts, while not specifically addressing the appropriate standard of review, have carefully scrutinized the factual record for clear error. *See Fernos-Lopez v. United States District Court for the District of Puerto Rico*, 599 F.2d 1087, 1091–93 (1st Cir.), *cert. denied*, 444 U.S. 931, 100 S.Ct. 275, 62 L.Ed.2d 189 (1979); *Schleper v. Ford Motor Co.*, 585 F.2d 1367, 1371–72 (8th Cir. 1978); *United States v. Brannon*, 546 F.2d 1242, 1247–49 (5th Cir. 1977); *United States v. Abascal*, 509 F.2d 752, 755–57 (9th Cir.), *cert. denied*, 422 U.S. 1027, 95 S.Ct. 2621, 45 L.Ed.2d 684 (1975); *United States v. Marra*, 482 F.2d 1196, 1200–02 (2d Cir. 1973); *United States v. Marshall*, 451 F.2d 372, 375–378 (9th Cir. 1971).

The majority states that the trial court's decision to use the summary contempt process is reviewable only for abuse of discretion when the record indicates "full consideration of the relative appropriateness of summary and plenary adjudication." The opinion acknowledges, however, that when the record demonstrates that the trial court did not accord such full consideration, the reviewing court owes the trial court's decision to use the summary process no deference.

I object to both the majority's characterization of the standard of review as abuse of discretion and to its actual review under that standard. As I have stated above, a threat of further disruption of the proceedings is, as a matter of law, a prerequisite to the use of the summary contempt process. The trial court must make a finding of fact that such a threat of further disruption exists. This finding of fact should be reviewed under the "clearly erroneous" standard by which similar findings are ordinarily reviewed by this court, *United States v. Hart*, 546 F.2d 798 (9th Cir. 1976) (en banc), *cert. denied*, 429 U.S. 1120, 97 S.Ct. 1155, 51 L.Ed.2d 571. The clearly erroneous standard gives due consideration for the opportunity of the trial judge to observe and assess the situation in its courtroom—to observe nuances which are, perhaps, not fully revealed to an appellate court by the cold language of the transcript. In short, a finding of a threat of further disruption of the proceedings is, in my view, a required prerequisite to the use of the summary contempt process and not merely a factor to be considered in the trial court's exercise of discretion. Accordingly, review on the basis of "the abuse of discretion" standard is inappropriate.

## IV. ADEQUACY OF THE RULE 42(a) CERTIFICATE

Rule 42(a) requires that the district judge issue a certificate reciting the facts consti-

---

va v. United States, 352 U.S. 385, 396, 77 S.Ct. 431, 437, 1 L.Ed.2d 415 (1967).

In *Sacher v. United States*, 343 U.S. 1, 72 S.Ct. 451, 96 L.Ed. 717 (1952), the Court does hold that the trial judge has discretion to cite for summary contempt at the time it occurs or at the conclusion of trial. "The overriding consideration is the integrity and efficiency of the trial process, and if the judge deems immediate action inexpedient he should be allowed discretion to follow the procedure taken in this case [waiting until the verdict was rendered]." *Id.* at 10, 72 S.Ct. at 455. *Accord United States v. Schiffer*, 351 F.2d 91, 95 (6th Cir. 1965). *Sacher* does not address, however, whether the ultimate decision to cite for summary contempt is reviewed under an abuse of discretion standard. The facts of *Sacher* indicated a compelling need: the defense counsel's entire course of conduct, in the face of repeated warnings, tended to disrupt and delay the trial and possibly cause a mistrial.

There is a reference in *United States v. Wilson*, 421 U.S. at 316–17, 95 S.Ct. at 1806–07, to the discretion of the trial court in determining whether the exercise of contempt power is necessary to provide a recalcitrant witness an incentive to testify. There is also a somewhat cryptic mention of an abuse of discretion in the final sentence of *Wilson*:

As with all power, the authority under Rule 42(a) to punish summarily can be abused; the courts of appeals, however, can deal with abuses of discretion without restricting the Rule *in contradiction of its express terms*, and without unduly limiting the power of the trial judge to act swiftly and firmly to prevent contumacious conduct from disrupting the orderly progress of a criminal trial.

It is not clear whether the reference to "abuses of discretion" applies to the finding of contempt, the punishment or the use of summary proceedings. It would seem, however, that somewhere in *Wilson's* detailed discussion of the compelling need for summary action reference would be made to the appellate standard of abuse of discretion if the court had intended that standard to be applied.

tuting contempt. This procedural safeguard is critically important. *United States v. Marshall*, 451 F.2d 372, 374–75 (9th Cir. 1971). In *Marshall*, we indicated that the 42(a) certificate must recite the facts in sufficient detail "to determine whether the conduct upon which the conviction rests was contemptuous, factually and legally; [and] whether it was of such character, and occurred in such circumstances, as to permit summary conviction under Rule 42(a) .... " *Id.* at 375 (footnote omitted).[14] The majority apparently finds "full consideration of the relative appropriateness of summary and plenary adjudication" in the judge's comment that the misbehavior left him "no alternative but to summarily punish." If this conclusory statement constitutes "full consideration" for the exercise of the awesome power to act as judge, prosecutor and jury without affording a defendant an opportunity to be heard it can be found in every case where a court elects to punish summarily. Apparently, for that reason, *Marshall* admonishes, "conclusionary language and general citations to the record are insufficient." *Id.*

Because a compelling need for an immediate remedy is a prerequisite for summary contempt, the certificate required under Rule 42(a) must clearly indicate that need. Here there is no indication in the certificate that there was any compelling need for summary contempt. The judge's exact words were "that summary vindication for said misbehavior in the actual presence of five other defense counsel and two prosecutors left the court no alternative but to summarily punish .... " This language merely indicates that the alleged contemnor's conduct occurred in the presence of other counsel. This will almost always be the case when contempt occurs "in the presence of the court" as required by Fed.R. Civ.P. 42(a). The majority would construe the certificate as implying necessity for summary punishment to prevent similar conduct by the other attorneys. I fail to see any such inference, but if that was the court's intention, it should have been expressed in the certificate. *Id.* at 376–77. *See Kelley v. Everglades Drainage District*, 319 U.S. 415, 421–22, 63 S.Ct. 1141, 1145, 87 L.Ed. 1485 (1943).

The fact that the offending conduct occurred in the presence of other attorneys is not in itself an indication of compelling need, and there were no other factors set forth to satisfy the requirement of specificity for the Rule 42(a) certificate. Thus the certificate was insufficient to support the summary contempt order.

## V. THE LACK OF JUSTIFICATION FOR THE SUMMARY CONTEMPT PROCEEDING

The majority reaches the issue of whether Gustafson's conduct was contemptuous. While I would not reach that issue, the majority's comments illustrate why a hearing was required. The majority has determined that this retired naval officer, apparently inexperienced in civilian trials, was intentionally violating the court's order by his rapid pace in reading his prepared argument to the jury. Certainly whether the violation was intentional presented an issue of fact which could only be resolved fairly after furnishing Gustafson an opportunity to be heard.

Similarly, the majority concludes that his persistent argument on prohibited topics reveals "an unmistakable pattern of deliberate disobedience." Again, an inexperienced

---

**14.** In *North Carolina v. Pearce*, 395 U.S. 711, 726, 89 S.Ct. 2072, 2081, 23 L.Ed.2d 656 (1969). The Supreme Court imposed similar requirements to assure that an increased sentence imposed upon one who had successfully attacked a prior conviction not be motivated by vindictiveness. The court stated:

> In order to assure the absence of such a motivation, we have concluded that whenever a judge imposes a more severe sentence upon a defendant after a new trial, the rea-

sons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding. And the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal.

attorney, sincerely seeking to present arguments on behalf of his client, could well believe that, his additional arguments were not within the purview of the order sustaining the prior objection. At least Gustafson should have been afforded the opportunity to offer an explanation. The majority apparently is able to find such conduct to constitute willful disobedience "beyond a reasonable doubt." I fail to see how the trial court, and much less we, as an appellate court, could determine Gustafson's subjective intent on these issues without his having been afforded an opportunity to be heard.

In any event, my review of the record convinces me that there were no compelling circumstances justifying the exercise of summary contempt. Gustafson's alleged transgressions were apparently limited to his closing argument. In effect, his participation in the trial was at an end. There was thus no reason or need for summary adjudication. There is very little difference between this case and *Taylor v. Hayes*, 418 U.S. 488, 94 S.Ct. 2697, 41 L.Ed.2d 897 (1974), where the contemnor was cited during trial, but not punished until it was over.

Although not elucidated by the trial court, it might be contended that summary action was required to prevent similar conduct by the other defense attorneys who were still to argue. Such a rationale does not withstand analysis. There is no support for it in the record. There is no indication that the other defense attorneys had behaved in a contemptuous manner, and in fact they probably found Gustafson's conduct embarrassing. The exercise of contempt power is limited to the least action adequate to accomplish the desired end. Any prophylactic purpose could adequately have been accomplished by giving Gustafson notice of contempt in open court (out of the presence of the jury) and setting a time and place for a hearing under Rule 42(b). The citation would clearly indicate to all attorneys that conduct such as Gustafson's would not be ignored.

Prior notice and an independent hearing would have allowed Gustafson to prepare a defense or explain his conduct, and perhaps allow the judge to become more detached.[15] *See Bloom v. Illinois*, 391 U.S. 194, 202, 88 S.Ct. 1477, 1482, 20 L.Ed.2d 522 (1968). *See generally In re Lewis*, 501 F.2d 418, 421 (9th Cir. 1974), *cert. denied*, 420 U.S. 913, 95 S.Ct. 1106, 43 L.Ed.2d 386 (1975); *United States v. Alter*, 482 F.2d 1016, 1022–24 (9th Cir. 1973); *Kuhns, The Summary Contempt Power: A Critique and a New Perspective*, 88 Yale L.J. 39, 45–70 (1978). In this case there was no need to deprive Gustafson of his fundamental rights of due process.

## VI. CONCLUSION

Basic principles of procedural due process limit the use of summary contempt power to extraordinary circumstances. We can sympathize with the frustrations of busy trial judges confronted with conduct such as that which occurred in this case. The court here used sound discretion in waiting until the close of Gustafson's argument and the withdrawal of the jury before addressing the matter. Nevertheless, in the absence of a true exigency, the notions of fundamental fairness embodied in the Constitution mandate notice and opportunity to be heard.

Before invoking the summary procedure of Rule 42(a), there must be a compelling reason for doing so. Gustafson's conduct did not create a threat to the orderly conduct of an ongoing trial and the judge's certificate fails to set forth facts so indicating. Summary contempt was thus inappropriate in this case, and the minimal procedural protections of Rule 42(b) were required. I would reverse the contempt citation, and remand to the district court for further proceedings.

---

**15.** If the contempt involves personal disrespect for the district judge, the judge is required to appoint another judge for the contempt hearing. Fed.R.Crim.P. 42(b); *Offutt v. United States*, 348 U.S. 11, 16–18, 75 S.Ct. 11, 1415, 99 L.Ed. 11 (1954).