# IN THE MATTER OF THE APPLICATION OF THE STATE OF HAWAII FOR A WRIT OF HABEAS CORPUS AD PROSEQUENDUM RE KENNETH P. H. NAM, Defendant

NO. 8774
(ORIGINAL PROCEEDING)

JULY 15, 1982

RICHARDSON, C.J., LUM, NAKAMURA,
PADGETT AND HAYASHI, JJ.

## OPINION OF THE COURT BY PADGETT, J.

This is a petition for a writ of habeas corpus commanding the release of Kenneth P. H. Nam, a special deputy prosecutor of the City and County of Honolulu, from custody resulting from an order holding him in contempt of court and sentencing him to imprisonment for the period of 24 hours.

On July 6, 1982, a hearing was held before the Honorable Simeon R. Acoba, Jr., presiding judge of the Twelfth Division, First Circuit, State of Hawaii, in Criminal No. 54601, *State of Hawaii v. Patrick Dale Cullen.* Petitioner and Darwin L. D. Ching, Esq. appeared for the State of Hawaii. From the transcript, it appears the hearing was called for the purpose of hearing arguments on a motion for a protective order and for the quashing of a subpoena duces tecum directed to the petitioner and issued at the behest of the defendant in that criminal action. However, after the appearances

of counsel and before that motion could be heard, Prosecutor Ching moved orally for the court to recuse itself under Canon 3C(1) of the Code of Judicial Conduct. After argument, that motion was denied.

Thereafter, the court heard the arguments on the motion for protective order and to quash the subpoena. The arguments on behalf of the State were made by Prosecutor Ching. In the course of that hearing, it became apparent that at a prior hearing, the court had ordered the petitioner to produce a particular document and the petitioner had refused. The counsel for the defendant in the criminal action had thereafter caused to be issued a subpoena duces tecum directed to the petitioner requiring him to produce that document. At the close of the argument on the motion, the court stated that it would take the matter under advisement and issue a decision. The court then added:

[THE COURT:] Oh, the record will reflect that during the entire hearing, Mr. Nam turned his back and head to the Court and looked out at the audience and during the entire hearing kept the back of his head to the Court. But really, I consider that so childish, it does not require the imposition of any contempt procedure.

MR. NAM: I'm compelled to respond to that, Your Honor. I was just trying to hide my contempt, Your Honor.

After a further exchange between defendant's counsel, Ms. Yuen, and Prosecutor Ching, the court stated:

THE COURT: What was your last comment, Mr. Nam? You were trying to hide what? I'm sorry. I didn't get it..

MR. NAM: If you didn't get it, Your Honor, it would be something I won't repeat for your benefit.

THE COURT: All right. Then I'll check the transcript, and if it says what I thought you said, then the Court will take appropriate action.

Shortly thereafter, the court reconvened the case, stating that he called the attorneys back to court because he believed that Mr. Nam's last statement to the court was something the court could not ignore. Prosecutor Ching raised the question of jurisdiction and the court found that it had jurisdiction. The prosecutor protested the lack of notice as to the hearing and the court responded that it was not a hearing. Prosecutor Ching then asked if the State's attorneys could leave and the court ordered them to be present. Prosecutor Ching

also protested that there was a lack of counsel for Mr. Nam and that the alleged contempt was not in the immediate view and presence of the court. The court then stated:

THE COURT: Let me state the following for the record: That the Court has at numerous times observed Mr. Nam's behavior, and I have attempted to not take any action either in — and the record will show — the prior proceedings because I felt that any contempt proceeding ultimately demeans the administration of the law especially where a contempt proceeding has to be brought against an officer of the court.

And I do not have any personal problems with Mr. Nam, and I really personally do not care what his opinion may be of me as a person. But we all have the obligation to observe certain rules in court, and the Court has to follow them, and the lawyers, as officers of the court, have to follow them, and I would not, because of any kind of criticism, be true to the duty that I have to uphold the rules of court if the Court were to take that kind of criticism as an obstacle to following through on what its duty must be.

Now, even if an attorney does not have respect for a particular judge — and being an attorney only two years ago, I know that attorneys have different feelings towards judges — but if there is a legitimate problem, then the Rules of Court provide the basis for taking action, and I think that the reason that the Rules of Court provide the basis for taking action is that the kinds of disrespect shown in court are to be avoided. Otherwise, as I said before, that deameans [sic] the entire administration of justice.

And I think it is unfortunate that after coming so far and so long, that I have to and am compelled to find Mr. Nam in contempt because that would be the last thing that I would want to do especially since he is at that point where he has retired and is only appearing here as a Special Deputy Prosecuting Attorney. The Court has jurisdiction under Section 710-1077 of the Hawaii Penal Code over criminal contempts of court —

MR. CHING: Your Honor —

THE COURT: — and as the Court, pursuant to that jurisdiction, I make the following findings.

MR. CHING: Your Honor, with respect —

THE COURT: Let me finish. Then you can make your argument.

The Motion for Protective Order and Quashing Subpoena Duces Tecum, having come on for hearing before the Court on July 6, 1982, and the Court having listened to arguments, Mr. Kenneth Nam, Special Prosecuting Attorney, entered his appearance on the record and, through all of the proceedings, turned his back and head to the Court and thereafter stated when this was noted on the record, "I was just trying to hide my contempt." By his actions and statements, Mr. Nam recklessly engaged in contemptuous behavior committed during the sitting of the Court in its immediate view and presence and directly tended to impair the respect due to the Court's authority.

Therefore, based on the foregoing, the Court finds Mr. Kenneth P. H. Nam guilty of Criminal Contempt of Court in violation of —

MR. CHING: Before the Court —

THE COURT: Let me finish. — in violation of —

MR. CHING: He's denied his right to counsel. Is the Court saying he doesn't have any right to counsel, Your Honor?

THE COURT: I'm saying that I'm finding him guilty of Contempt on a particular section of the statute.

— in violation of Section 710-1077(1)(a), Hawaii Penal Code, and upon the court's judgment of Contempt, sentences him to spend twenty-four hours in jail. Mittimus to issue forthwith.

Prosecutor Ching took exception to the ruling of the court, and again argued that there was no jurisdiction and notice. Petitioner was subsequently incarcerated.

We granted a temporary writ of habeas corpus, ordering the petitioner to show cause why the writ should not be dissolved and the respondent to file responsive memoranda. That has been done.

As we understand petitioner's memorandum, two points are raised: First, petitioner contends that since the order of contempt refers only to § 710-1077(1)(a) and does not recite that the court is treating the offense as a petty misdemeanor under § 710-1077(3); that, therefore, petitioner was held guilty of committing a misdemeanor. (rather than a petty misdemeanor); and that the court, accordingly, could not proceed summarily against him.

We find this contention without merit. Under § 701-107(4), it is provided:

A crime is a petty misdemeanor if it is so designated in this Code or in a statute other than this Code enacted subsequent thereto, or if it is defined by a statute other than this Code which provides that persons convicted thereof may be sentenced to imprisonment for a term of which the maximum is less than one year.

Section 706-663 provides:

A person who has been convicted of a misdemeanor or a petty misdemeanor may be sentenced to imprisonment for a definite term which shall be fixed by the court and shall not exceed one year in the case of a misdemeanor or thirty days in the case of a petty misdemeanor.

The sentence of 24 hours imprisonment is apposite in the case of a conviction for a petty misdemeanor.

Section 710-1077 in pertinent part provides as follows:

(1) A person commits the offense of criminal contempt of court if:

(a) He recklessly engages in disorderly or contemptuous behavior, committed during the sitting of a court in its immediate view and presence, and directly tending to interrupt its proceedings or impair the respect due to its authority; . . .

. . . . .

(3) The court may treat the commission of an offense under subsection (1) as a petty misdemeanor, in which case:

(a) If the offense was committed in the immediate view and presence of the court, or under such circumstances that the court has knowledge of all of the facts constituting the offense, the court may order summary conviction and disposition; . . .

. . . .

(5) Whenever any person is convicted of criminal contempt of court or sentenced therefor, the particular circumstances of the offense shall be fully set forth in the judgment and in the order or warrant of commitment. In any proceeding for review of the judgment, sentence, or commitment, no presumption of law shall be made in support of the jurisdiction to render the

judgment, pronounce the sentence, or order the commitment. A judgment, sentence, or commitment under subsection (3)(a) shall not be subject to review by appeal, but shall be subject to review in an appropriate proceeding for an extraordinary writ or in a special proceeding for review.

In the commentary on the above section, it is stated:

Criminal contempt is conduct which brings the court into disrespect or which interferes with the administration of justice. A penalty for criminal contempt is a sentence or order which the defendant cannot avoid. Insulting behavior toward the court or an assault on a bailiff would constitute two modes of criminal contempt, for which a court might impose a sentence of imprisonment for a certain period of time. . . .

. . . . .

Although often challenged, the United States Supreme Court has held, until recently, mostly on historical grounds, that contempt proceedings were not intended by the framers of the Constitution to be within the constitutional guarantees of trial by jury, and that "it has always been the law of the land, both state and federal, that the courts — except where specifically precluded by statute — have the power to proceed summarily in contempt matters."

We see nothing in the statute or the commentaries to indicate that a statement that the court is treating the matter as a petty misdemeanor is necessary in the order. On the contrary, the very fact that the court proceeded summarily is evidence of such treatment, since the court has no power to proceed summarily, under our statute, except in cases of petty misdemeanors.

Petitioner has not contended that his conduct was not contemptuous. Although he was acting as counsel in the case being heard, it is not disputed that he sat throughout the proceedings with his back to the court and his head turned away from the court, nor that when his actions were noted for the record, he spontaneously stated "I'm compelled to respond to that, Your Honor. I was just trying to hide my contempt, Your Honor." Moreover, when the court asked him to repeat his last comment, he stated "If you didn't get it, Your Honor, it would be something that I won't repeat for your benefit." Petitioner's conduct and statements were deliberately and flagrantly contemptuous of the court.

However, petitioner's second contention is that despite the court's power to summarily punish for contempt committed in its presence, there were no exceptional circumstances justifying such a procedure in this case.

Considering the summary conviction (under Federal Criminal Rule 42(a)) of an attorney for contempt of court during the course of criminal proceedings, the United States Court of Appeals for the Ninth Circuit in *In Re Gustafson,* 650 F.2d 1017 (9th Cir. 1981), stated at 1022:

> We review for such abuse of discretion in the light of the fundamental principles underlying the contempt power. "Rule 42(a) was reserved 'for exceptional circumstances' " *Harris v. United States,* 382 U.S. at 164, 86 S. Ct. 353 (quoting *Brown v. United States,* 359 U.S. 41, 54, 79 S. Ct. 539, 548, 3 L. Ed.2d 609 (1959)). The rule is to be applied when the contemnor's conduct is "such an open, serious threat to orderly procedure that instant and summary punishment, as distinguished from due and deliberate procedures . . . , [is] necessary." *Harris v. United States,* 382 U.S. at 165, 86 S. Ct. at 354 (citation omitted). Rule 42(b) is to be applied "except [in] those unusual situations envisioned by Rule 42(a) where instant action is necessary to protect the judicial institution itself." *Id.* at 167, 86 S. Ct. at 355.

> . . . .

> On the other hand, we recognize that the determination to impose summary contempt, assuming that the requirements are met, is wisely left primarily to the trial judge. . . . Trials are by their nature contentious. . . . As contention begins to develop into disobedience or disorder, the trial court is in the best position to judge whether there exists a need for immediate penal vindication of the dignity and authority of the court. In carrying out their heavy responsibility of ensuring fair trial, district judges must have the ability to quickly and authoritatively act to halt incipient disorder.

Although we have no equivalent to Federal Criminal Procedure Rule 42(a), we agree with the standards applied in passing upon summary adjudications of contempt in the case just quoted. Our case is one which clearly calls for summary action.

This is not a case such as *Taylor v. Hayes,* 418 U.S. 488, 94 S. Ct. 2697, 41 L. Ed.2d 897 (1974) where the attorney was not given an opportunity to respond to the charges of contempt made against him. On the contrary, the transcript reveals that the court asked him, in quite polite terms, what his comment had been and he stated "If you didn't get it, Your Honor, it would be something that I won't repeat for your benefit." Had petitioner desired to withdraw his remark or qualify or clarify it or apologize for it, certainly, he had the opportunity to do so at that point. Moreover, in the proceedings which followed, Prosecutor Ching was permitted to, and did argue vigorously on behalf of the petitioner. He then, like petitioner now, presented only jurisdictional and procedural matters. Although the court stated that the proceeding was not a hearing, in point of fact, the petitioner and counsel had the opportunity to be heard both before and after sentence was pronounced.

Moreover, this case does not convey the flavor of animosity on the part of the judge against counsel which is so apparent in *Taylor v. Hayes, supra.* On the contrary, the transcript makes clear that the judge would not have taken action had it not been for petitioner's voluntary and gratuitous remark that his conduct in keeping his back to the court was "to hide" his contempt. Additionally, the judge sentenced petitioner to only one day's imprisonment although a thirty-day sentence can be given in petty misdemeanor cases. In *Taylor v. Hayes, supra,* the judge sentenced the attorney to the statutory maximum of six months on each of nine charges.

Finally, many of the actions which were the basis of the charges in *Taylor v. Hayes, supra,* could have been attributed to a good faith effort to defend the attorney's clients rather than the unambiguous contempt such as was displayed by petitioner here. Petitioner's conduct, in the court below, could not have advanced the interests of the State, the petitioner's client.

The transcript in this case reveals that at a previous hearing, the court had ordered petitioner to produce a document and petitioner had refused to do so. What was under consideration at the July 6 hearing was a motion to quash a subpoena duces tecum issued to the petitioner. On the record before us, we are in no position to pass upon whether the previous order of the court was correct or incorrect or whether the motion to quash was well taken. However, as the United States Supreme Court stated in *Sacher v. United States,* 343

U.S. 1, 9, 72 S. Ct. 451, 455, 96 L. Ed. 717 (1952):

> Of course, it is the right of counsel for every litigant to press his claim, even if it appears farfetched and untenable, to obtain the court's considered ruling. Full enjoyment of that right, with due allowance for the heat of controversy, will be protected by appellate courts when infringed by trial courts. But if the ruling is adverse, it is not counsel's right to resist it or to insult the judge — his right is only respectfully to preserve his point for appeal. During a trial, lawyers must speak, each in his own time and within his allowed time, and with relevance and moderation. These are such obvious matters that we should not remind the bar of them were it not for the misconceptions manifest in this case.

*Accord, In Re Gustafson, supra* at 1020.

Certainly, considering the transcript attached to petitioner's memorandum in this case, the court's previous order to produce a document which petitioner had refused, the outstanding subpoena duces tecum addressed to and served upon him, as to which the motion to quash was pending, the spontaneousness of petitioner's remark in the instant case and even his refusal to repeat it at the request of the court, there can be no doubt that there was no abuse of discretion on the part of the court below in proceeding summarily. There was undoubtedly an open, serious, threat to orderly procedure in the case, which required instant and summary punishment. *In Re Gustafson, supra.*

We are not unaware of the growing tendency on the part of members of the bar on both sides of both criminal and civil cases to indulge, for the benefit of the media, in personal attacks upon members of the judiciary, descending, in many cases, to name-calling, vilification and even profanity. That such attacks can and do result in the disruption of the orderly and effective administration of justice is self-evident from the incident before Judge Acoba which gave rise to those proceedings.

We take this opportunity to call to the attention of the bar the following provisions from the Code of Professional Responsibility. Ethical Consideration EC8-6 provides in part:

> Adjudicatory officials, not being wholly free to defend themselves, are entitled to receive the support of the bar against unjust criticism. While a lawyer as a citizen has a right to criticize such

officials publicly, he should be certain of the merit of his complaint, use appropriate language, and avoid petty criticisms, for unrestrained and intemperate statements tend to lessen public confidence in our legal system.

Disciplinary Rule 7-106(c)(6) provides:

In appearing in his professional capacity before a tribunal, a lawyer shall not:

. . . .

(6) Engage in undignified or discourteous conduct which is degrading to a tribunal.

The reason for this rule is cogently stated in the first two sentences of Ethical Consideration EC7-36, to wit:

Judicial hearings ought to be conducted through dignified and orderly procedures designed to protect the rights of all parties. Although a lawyer has the duty to represent his client zealously, he should not engage in any conduct that offends the dignity and decorum of proceedings.

When conduct which violates the ethical considerations is indulged in outside of the presence of the court, it certainly has a tendency to be destructive of the judicial system and the orderly administration of justice.

When it is indulged in the course of proceedings before and in the presence of the court, it violates Disciplinary Rule 7-106(C)(6) and the trial judge has discretion to punish it summarily as a petty misdemeanor if, in his view, that is necessary to the orderly administration of justice. As the Supreme Court of the United States said in *Sacher v. United States, supra,* 343 U.S. at 13-14:

But that there may be no misunderstanding, we make clear that this Court, if its aid be needed, will unhesitatingly protect counsel in fearless, vigorous and effective performance of every duty pertaining to the office of the advocate on behalf of any person whatsoever. But it will not equate contempt with courage or insults with independence. It will also protect the processes of orderly trial, which is the supreme object of the lawyer's calling.

Like the United States Supreme Court, we refuse to equate an attorney's contempt for the court with courage or his insults with independence, and we will protect the orderly processes of justice.

Accordingly, the petition for a writ of habeas corpus is denied, the temporary writ is dissolved, and petitioner is remanded to cus-

tody in accordance with the order below.

*Colleen K. Hirai,* Deputy Corporation Counsel, for petitioner Kenneth Nam.

*Walter G. Chuck (Allison H. Lynde* and *Alexander T. MacLaren* with him on the memoranda) for Judge Acoba.