In the Matter of **CHRISTOPHER R. EVANS**, Attorney at Law, Applicant–Petitioner, v. **THE HONORABLE FRANK T. TAKAO**, Judge of the Circuit Court of the First Circuit, State of Hawaii, and **STATE OF HAWAII**, Respondents

NO. 16361

(CR. NO. 91–1114)

DECEMBER 16, 1992

LUM, C.J., MOON, KLEIN, AND LEVINSON, JJ., AND RETIRED JUSTICE HAYASHI,* ASSIGNED BY REASON OF VACANCY

---

*Retired Justice Hayashi, who signed the Order Denying the Petition for Writs of Prohibition and Mandamus filed on October 9, 1992, was unavailable for signature when this opinion was filed.

## OPINION OF THE COURT BY LEVINSON, J.

The petitioner Christopher Evans (Evans) moves this court for writs of prohibition and mandamus prohibiting the respondent, the Honorable Frank T. Takao (Takao), judge of the Circuit Court of the First Circuit, State of Hawaii, from pursuing a criminal contempt of court

charge against Evans. In the alternative, Evans moves this court for an order transferring Evans's hearing on the charge to another judge. For the reasons set forth below, we decline to grant the petition for writs of prohibition and mandamus.

## I.

The present petition arises out of Evans's representation of Shane Ahlo (Ahlo) in a criminal prosecution tried before Takao. Ahlo was charged with one count of burglary in the first degree and two counts of terroristic threatening in the first degree for allegedly breaking into Sherryl Santiago's (Santiago) home and threatening Santiago and Annette DeMello (DeMello) with a gun. Santiago lived a few houses away from the residence that Ahlo shared with DeMello. Ahlo's defense to the charges was that the gun allegedly used in committing the offense was not a real gun, but was rather a cigarette lighter shaped like a gun.

On June 30, 1992, the first day of trial, Ahlo informed Takao that he wanted his current attorney to be replaced by Evans. The court acceded to Ahlo's request and trial commenced the same day by agreement of the parties.

On July 7, 1992, Santiago testified on behalf of the prosecution. On direct examination, Santiago testified, *inter alia*, that when Ahlo entered her home, Ahlo was holding an object that appeared to her to be a gun, pointed it at DeMello and Santiago, and endeavored to convince DeMello to come home with him. When this strategy failed, Ahlo reached behind Santiago, grabbed DeMello by the hair, dragged her to the floor, and placed the object to DeMello's head. Ahlo eventually left Santiago's house with DeMello, who was crying.

Immediately upon completion of direct examination, Evans handed an object, enclosed in a manila envelope, to the deputy prosecuting attorney (DPA) trying the case for the State. The DPA asked to approach the bench, where, out of the jury's hearing, he noted that he had not seen the object, which Evans identified for the first time as "a cigarette lighter." The DPA advised Takao that the defense had not produced the lighter in discovery. Evans responded that the prosecution had "never asked for it" and that the DPA "[knew] all along, because I said it in my opening argument." Takao sustained the DPA's "objection" on the basis that the object should have been produced in discovery[1] and directed Evans to proceed with his examination.

Evans then began his cross–examination of Santiago by asking her to examine the object. The DPA objected to Santiago being permitted to examine any object that had not been disclosed to the prosecution in discovery. Takao sustained the objection and again directed Evans to proceed with his examination. The following colloquy ensued:

Q. (By Mr. Evans:) Do you recognize that object?

A. [By Santiago] Yes.

Q. Is that the object you saw?

[DPA]: Your Honor —

THE COURT: Just a moment. All right, I will sustain the objection.

---

[1] Exhibit 3 attached to the State's memorandum in opposition to Evans's petition reveals that Ahlo's original attorney had submitted a witness and exhibit list to the prosecutor's office. The exhibit list reflected a key chain but failed to indicate that a cigarette lighter in the shape of a gun was attached to the chain.

MR. EVANS:     Is that the object you saw?

[DPA]:   Your Honor —

THE COURT:     Just a moment.     The objection is sustained.   The Court has made its ruling, Mr. Evans.

MR. EVANS:     Your Honor, I've disclosed to the jury and the Court and the Prosecution on Tuesday what the object would be that this witness would identify.

THE COURT:     Objection is sustained.

MR. EVANS:     Since that time, the Prosecution has never asked to view that object. Furthermore, Your Honor —

THE COURT:     Counsel will approach the bench.

(At the bench)

THE COURT:     Mr. Evans, the Court has made its ruling.   You have a continuing obligation as counsel to —

MR. EVANS:     Your Honor, the remedy is not to prevent Defense from using an exhibit which is clearly relevant to this case.   That's not the remedy.

THE COURT:     Why didn't you show —

MR. EVANS:     The remedy is to take a recess, and allow the Prosecution to —

THE COURT:     This is a trial.

MR. EVANS:     I understand.

THE COURT:     Okay, I'll sustain the objection.

MR. EVANS:     Your Honor —

THE COURT: Mr. Evans, the Court has made its ruling. If you keep persisting, we're going to have to continue this case for a couple of days.

MR. EVANS: Your Honor, then that's what I'm asking for, a recess to allow the Prosecution — you're trying to prevent the defendant from having a fair trial in this case, Your Honor, and I object.

[DPA]: Excuse me, Your Honor.

MR. EVANS: I told the Prosecution what the object was going to be.

THE COURT: Mr. Evans —

MR. EVANS: I'm sorry, Your Honor.

THE COURT: Mr. Evans.

MR. EVANS: Yes.

THE COURT: Do not raise your voice.

MR. EVANS: I'm sorry, Your Honor, I cannot stand here and allow my client not to have a fair trial. That's the object the witness saw.

[DPA]: Your Honor —

THE COURT: Mr. Evans, I'm going to hold you in contempt of court.

MR. EVANS: Fine.

THE COURT: All right, then I will excuse the jury. The jury is excused. Just wait outside, please.

(The jury was excused.)

THE COURT: I will excuse the witness, too. Will you step outside and wait.

(The witness was excused.)

THE COURT: Mr. Evans, the Court will make the finding notwithstanding the ruling, the

Court's ruling. You have raised your voice to the Court not only once, but I've asked you to keep quiet, and you continue to raise your voice. I'm going to hold you in contempt of court, direct contempt of this Court, and I'm going to impose a two–day jail sentence.

      MR. EVANS:   Your Honor —

      THE COURT:   Call the sheriff. Mittimus to issue forthwith.

Evans immediately asked for leave to retain counsel, and Takao granted leave. Evans then requested that Takao continue the contempt proceedings until the conclusion of trial. Takao replied, "I'm going to be imposing the sentence right now, because I cannot tolerate such behavior on your part. That's the first time that ever happened to me in my twenty–five years on the bench." Evans again requested that the contempt proceeding be delayed until after trial in order to prevent prejudice to Ahlo. Takao withdrew the sentence and postponed any further hearing until Ahlo's trial concluded. The trial proceeded to verdicts.

On July 9, 1992, the jury found Ahlo guilty of all offenses alleged in the indictment. On the same afternoon, Takao held a further hearing on the contempt charge. Takao articulated the charge against Evans as follows:

> Mr. Evans, you are hereby charged with violation of [Hawaii Revised Statutes (HRS) § ] 710–1077, Subsection 1, Subsection (a). In the Court's presence, you have recklessly engaged in disorderly or contemptuous behavior directly tend[ing] to interrupt proceedings or impair respect to the Court.

The Court therefore has the power to order summary conviction in its position. The charge is a petty misdemeanor, and potential penalty shall not exceed 30 days in jail and/or a $500 fine. Accordingly, there is no right to a jury trial.

The substance of the charge is that you engaged in the following behavior that was disruptive and disrespectful, tending to interrupt the proceedings or to impair the respect due the Court's authority. Do you understand the charge?

Matthew Chung (Chung), Evans's counsel, replied, "Your Honor, we understand the charge." After Takao informed Chung that the hearing on the contempt citation would go forward immediately, Takao characterized Evans's allegedly contemptuous behavior in the following manner:

Okay, the Court has made a ruling in this case that the defendant violated discovery rules; that the defendant had a continuing objection [sic — probably "obligation"] to disclose this evidence to the prosecutor; and the Court has ruled that that particular piece of evidence may not be introduced in evidence.

Notwithstanding the Court's ruling, Mr. Evans defied the Court and proceeded to show the evidence in question, and sought to elicit testimony regarding the evidence. Despite the prosecutor's repeated — the deputy prosecutor repeatedly called the Court's attention regarding the attempt made by Mr. Evans, and the Court repeatedly sustained the objection. But notwithstanding the Court's ruling, the defendant continued to question the witness regarding the evidence.

The Court called for a bench conference and reminded Mr. Evans of the Court's ruling. Mr. Evans started to respond, and the Court, realizing that his voice was getting loud, loud enough for the jury to hear, the Court asked Mr. Evans to lower his voice. Mr. Evans then started to yell, and before the bench conference was over, removed himself from the bench conference and continued to yell at the top of his voice, telling the Court that he could not accept the Court's ruling. And at that point in time, the Court had to excuse the jury and the witness.

Prior to Mr. Evans removing himself from the bench conference, the Court reminded Mr. Evans of the contempt powers of the Court, but he challenged the Court to use the contempt powers of the Court, and all of this occurred in the presence of the jury.

Takao then asked Chung if he had anything to say on Evans's behalf. Chung responded by stating:

Your Honor, I believe under the statute, what you're citing my client; one, the Court needs to state what's the order. And secondly, the Court needs to state what the supposed violation is, and the section. And I believe the hearing on whether or not there is in fact a contempt is held before a different judge.

Takao explained that Chung was referring to the procedure required for "constructive contempt," that this was a case of "contempt occurr[ing] directly in the presence of the Court," and that therefore "this Court has the power to dispose of that contempt promptly."

Chung asked for a continuance to enable counsel to review the July 7, 1992 transcript and the statements made by the various witnesses. Takao granted the request and set the contempt hearing for August 18, 1992.

On August 12, 1992, Evans filed the present verified petition for writs of prohibition and mandamus and for a stay of the proceedings. We temporarily granted the stay pending the disposition of the petition and issued an order to show cause. The State filed a response to the petition and Takao, pursuant to Hawaii Rules of Appellate Procedure (HRAP) 21(c) (1984), elected not to file a response.[2] On October 9, 1992, we entered an order denying Evans's petition and dissolving the temporary stay of proceedings. We also indicated that an opinion would be filed at a later date.

## II.

In his petition, Evans urges this court, on the record before us, to rule as a matter of law that he is not guilty of contempt of court. Alternatively, Evans argues, pursuant to the due process clauses of the fourteenth amendment to the United States Constitution and article I, section 5 of the Hawaii Constitution, that: (1) he has a right to a finding that Takao's oral charge did not provide adequate notice of the specific charges against him; (2) he is entitled to a written order to show cause particularizing his allegedly contemptuous conduct; and (3) any further hearing on the charges must be heard by a judge other than Takao.

---

[2] HRAP 21(c) provides in relevant part that "[i]f the judge or judges named respondents do not desire to appear in a proceeding, they may advise the clerk and all parties by letter, but the petition shall not thereby be taken as admitted."

A writ of mandamus and/or prohibition is an extraordinary remedy that will not issue unless the petitioner demonstrates a clear and indisputable right to relief and a lack of other means adequately to redress the alleged wrong or obtain the requested action. *Breiner v. Takao*, 73 Haw. 499, 502, 835 P.2d 637, 640 (1992) (citing *State v. Oshiro*, 69 Haw. 438, 441, 746 P.2d 568, 570 (1987)). "Such writs, however, are not meant to supersede the legal discretionary authority of the trial courts, nor are they to serve as legal remedies in lieu of normal appellate procedure." *Id.* at 502, 835 P.2d at 640 (citing *State ex rel. Marsland v. Town*, 66 Haw. 516, 668 P.2d 25 (1983)). As a threshold matter, we must therefore determine which of Evans's claims, if any, are ripe for review at this time. *Cf. Breiner, supra; see* HRS § 710–1077(5) (1985).

### III.
### A. **Was Evans in contempt of court?**

There are two types of criminal contempt in Hawaii — direct "summary" contempt and indirect "constructive" contempt. *Gabriel v. Gabriel*, 7 Haw. App. 95, 99, 746 P.2d 574, 577 (1987) (citing *Murray v. Murray*, 60 Haw. 160, 587 P.2d 1220 (1978), and *Hawaii Pub. Employment Relations Bd. v. Hawaii State Teachers Ass'n*, 55 Haw. 386, 520 P.2d 422 (1974)). Direct summary criminal contempt occurs when "the offense [is] committed in the immediate view and presence of the court, or under such circumstances that the court has knowledge of all of the facts constituting the offense[.]" HRS § 710–1077(3)(a) (1985); *see also In re Nam*, 65 Haw. 119, 648 P.2d 1101 (1982). Other contumacious offenses are deemed indirect constructive criminal contempt. *See* HRS § 710–1077(3)(b) (1985); *State v. Ryan*, 59 Haw.

425, 583 P.2d 329 (1978); *In re Bettencourt*, 55 Haw. 430, 521 P.2d 668 (1974); *Gabriel*, 7 Haw. App. at 99, 746 P.2d at 577.

In the present case, Takao has charged Evans with direct summary criminal contempt of court in violation of HRS § 710–1077(1)(a) (Supp. 1991). HRS § 710–1077 provides in relevant part:

> (1)  A person commits the offense of criminal contempt of court if:
>
> > (a)  The person recklessly engages in disorderly or contemptuous behavior, committed during the sitting of a court in its immediate view and presence, and directly tending to interrupt its proceedings or impair the respect due to its authority[.]

HRS § 710–1077(3) (1985) provides in relevant part:

> The court may treat the offense under subsection (1) as a petty misdemeanor, in which case:
>
> > (a)  If the offense was committed in the immediate view and presence of the court, or under such circumstances that the court has knowledge of all of the facts constituting the offense, the court may order summary conviction and disposition[.]

Finally, HRS § 710–1077(5) (1985) provides in relevant part that "[a] *judgment, sentence, or commitment* under subsection (3)(a) shall not be subject to review by appeal, but shall be subject to review in an appropriate proceeding for an extraordinary writ or in a special proceeding for review." (Emphasis added.)

Takao initially proceeded to find Evans in direct summary contempt of court, sentencing him to two days in jail. However, Takao subsequently withdrew the judgment and sentence and agreed to hold a hearing. At the July 9, 1992 hearing, Evans, via Chung, requested that the hearing be further delayed, and Takao acceded to the request. Evans thereafter filed the petition now before us; accordingly, there is no "judgment, sentence, or commitment," *see* HRS § 710–1077(5), for us to review. Therefore, that portion of the petition requesting a ruling that Evans's conduct was not contemptuous is premature. Nevertheless, pursuant to this court's general supervisory powers as provided in HRS ch. 602 (1985), we will maintain jurisdiction over the other issues Evans raises in his petition.[3]

## B. **Did Evans receive adequate and particularized notice of the charge against him?**

Due process is not a fixed concept requiring a specific procedural course in every situation. ***Sandy Beach***

---

[3] HRS § 602–4 (1985) provides that "[t]he supreme court shall have the general superintendence of all courts of inferior jurisdiction to prevent and correct errors and abuses therein where no other remedy is expressly provided by law."

HRS § 602–5 (1985) provides in relevant part:

The supreme court shall have jurisdiction and powers as follows:

. . . .

(6)  To make or issue any order or writ necessary or appropriate in aid of its appellate or original jurisdiction, and in such case any justice may issue a writ or an order to show cause returnable before the supreme court;

(7)  To make and award such judgments, decrees, orders and mandates . . . and do such other acts and take such other steps as may be necessary to carry into full effect the powers which

*Defense Fund v. City Council of the City and County of Honolulu*, 70 Haw. 361, 378, 773 P.2d 250, 261 (1989); *cf. Cafeteria & Restaurant Workers Union, Local 473 v. McElroy*, 367 U.S. 886, 895, 81 S. Ct. 1743, 1748, 6 L. Ed. 2d 1230 (1961). Rather, due process is flexible and calls for such procedural protections as the particular situation demands. *Sandy Beach Defense Fund*, 70 Haw. at 378, 773 P.2d at 261; *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S. Ct. 2593, 2600, 33 L. Ed. 2d 484 (1972). The basic elements of procedural due process of law require notice and an opportunity to be heard at a meaningful time and in a meaningful manner. *Sandy Beach Defense Fund*, 70 Haw. at 378, 773 P.2d at 261; *see also Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 902, 47 L. Ed. 2d 18 (1976); *North Georgia Finishing, Inc. v. Di–Chem, Inc.*, 419 U.S. 601, 605–06, 95 S. Ct. 719, 722, 42 L. Ed. 2d 751 (1975).

This court has recognized that direct summary criminal contempt proceedings are "reserved 'for exceptional circumstances . . . where instant action is necessary to protect the judicial institution itself.' " *In re Nam*, 65 Haw. at 125, 648 P.2d at 1105 (citing *In re Gustafson*, 650 F.2d 1017, 1022 (9th Cir. 1981), and quoting *Harris v. United States*, 382 U.S. 162, 165, 167 (1965)); *accord Miranda v. Southern Pacific Transportation Co.*, 710 F.2d 516, 522 (9th Cir. 1983). In the face of "an open, serious threat to orderly procedure in the case" or to "the orderly administration of justice," HRS §§ 710–1077(1)(a) and (3)(a) authorize a court to impose "instant and summary punishment" and to dispense with " 'due and deliberate

---

are or shall be given to it by law or for the promotion of justice in matters pending before it.

procedures ....' " *In re Nam*, 65 Haw. at 125, 127–28, 648 P.2d at 1105–07 (quoting *Harris*, 382 U.S. at 165).

Nevertheless, Evans concedes too much when he suggests in his petition that "[g]enerally, *no procedural due process* is afforded a person who, in the presence of the Court, is found to be guilty of summary contempt and immediate sentence is pronounced and punishment is imposed." (Emphasis added.)  To the contrary, "[e]ven where summary punishment for contempt is imposed during trial, 'the contemnor has normally been given an opportunity to speak in his own behalf in the nature of a right of allocution.' " *Taylor v. Hayes*, 418 U.S. 488, 498, 94 S. Ct. 2697, 2703, 41 L. Ed. 2d 897 (1974) (quoting *Groppi v. Leslie*, 404 U.S. 496, 504 (1972)).  And where conviction and punishment for conduct during trial are delayed until after trial, the alleged contemnor "should have reasonable notice of the specific charges and an opportunity to be heard in his own behalf." *Id.* at 498–99, 94 S. Ct. at 2703.[4]

---

[4] The *Taylor* Court delineated an alleged contemnor's "opportunity to be heard in his own behalf" as follows:

> This is not to say, however, that a full–scale trial is appropriate. Usually, the events have occurred before the judge's own eyes, and a reporter's transcript is available.  But the contemnor might at least urge, for example, that the behavior at issue was not contempt but the acceptable conduct of an attorney representing his client; or, he might present matters in mitigation or otherwise attempt to make amends with the court.

418 U.S. at 499, 94 S. Ct. at 2703.  The Court further acknowledged the recommendation of the American Bar Association Advisory Committee on the Judge's Function that "[b]efore imposing any punishment for criminal contempt, the judge should give the offender notice of the charges and at least a summary opportunity to adduce evidence or argument relevant to guilt or punishment." 418 U.S. at 499 n.8, 94 S. Ct. at 2703 n.8 (quoting American Bar Association Project on Standards of Criminal Justice, The Function of the Trial Judge § 7.4 at 95

Evans cites *Gabriel* and *Taylor* for the proposition that procedural due process requires that a person adjudicated guilty of direct summary criminal contempt first be served with a written order to show cause when sentence and punishment are deferred until after trial or a later date; anything less, Evans argues, deprives the alleged contemnor of adequate notice of the specific conduct with which he is charged. Contrary to Evans's contentions, neither *Gabriel* nor *Taylor* mandates *written* notice in direct summary criminal contempt proceedings.

In *Gabriel*, the parties agreed that the alleged misconduct at issue constituted indirect constructive — rather than direct summary — criminal contempt. 7 Haw. App. at 99, 746 P.2d at 577. As we have indicated, indirect constructive criminal contempt is governed by HRS § 710–1077(3)(b), which provides that when the offense occurs and the court elects to treat it as a petty misdemeanor, "the court shall order the defendant [i.e., the alleged contemnor] to appear before it to answer a charge of criminal contempt of court[.]" The Intermediate Court of Appeals (ICA) in *Gabriel* noted that, unlike some jurisdictions, Hawaii has no rule of court expressly authorizing "oral notice of the charges in a constructive contempt situation"; in the absence of such a rule, the ICA expressed the "view" that "the order called for in HRS § 710–1077(3)(b) should be in the form of a written order to show cause served on the accused." *Id.* at 101, 746 P.2d at 578.[5] The

---

(Approved Draft 1972)). The Advisory Committee's recommendation was qualified in its commentary, however, by the admonition that " '[n]othing in this standard . . . implies that a plenary trial of contempt is required.' " *Id.*

[5] The "view" expressed by the ICA in *Gabriel* was entirely dictum. The actual holding of the case was that "[a]ssuming for discussion pur-

*Gabriel* court did not discuss what, or even if, notice was required under HRS §§ 710–1077(1)(a) and (3)(a), the direct summary criminal contempt statutes under which Evans is charged in the present case.

Unlike *Gabriel*, *Taylor* was a direct summary criminal contempt case.[6] Significantly, the United States Supreme Court in *Taylor* did not require *written* notice of the specific charges. The *Taylor* Court merely held that "before an attorney is finally adjudicated in contempt and sentenced after trial for conduct during trial, he should have reasonable notice of the specific charges and opportunity to be heard in his own behalf." 418 U.S. at 498–499, 94 S. Ct. at 2703. Therefore, the proper inquiry in the present case is whether Takao accorded Evans "reasonable notice of the specific charges and [an] opportunity to be heard[.]" *Id.*

When Takao initially held Evans in contempt of court on July 7, 1992, he described the conduct that he believed to be contemptuous; Takao, at the request of Evans's

---

poses . . . that [the] oral order constituted the order required under HRS § 710–1077(3)(b), that order was inadequate because it failed to give [the accused] 'notice of the specific charges[.]' *Taylor v. Hayes*, 418 U.S. at 499, 94 S. Ct. at 2703, 41 L. Ed. 2d at 908." *Id.*, 7 Haw. App. at 101, 746 P.2d at 578.

[6] *Taylor* involved a murder trial in which defense counsel was the alleged contemnor. In the course of the proceedings, the trial judge informed the petitioner on nine different occasions that he was in contempt of court. At the conclusion of the trial, the trial judge, in the jury's presence, made a statement concerning the petitioner's trial conduct, and, refusing the petitioner's request to respond, imposed consecutive sentences on nine counts of contempt aggregating almost four and one-half years' imprisonment. Subsequently, the trial judge amended the judgment to eliminate the first contempt charge and to reduce each of the remaining sentences to six months' imprisonment, but was silent as to whether the sentences were to run concurrently or consecutively.

attorney, subsequently agreed to withdraw sentence and continue the proceedings until after the conclusion of Ahlo's trial.

On July 9, 1992, Takao explained once again in detail the specific charges and cited the specific statute — HRS § 710–1077(1)(a) — under which Evans was charged. Evans appeared with counsel and was given an opportunity to be heard. Evans asked for and received a further continuance of thirty days. That Evans received reasonable notice of the specific charges on July 9, 1992 is most clearly demonstrated by his own attorney's rationale for requesting the further continuance:

> MR. CHUNG:
>
> I need more time to find out what happened based on the transcript, Judge. I bet, or I would suspect that the bench conference is a part of the transcript. *I would ask for simply those portions of the transcript that would relate to the facts that support the Court's charge.* And thereafter, we can come back with the hearing after I've had a chance to appropriately prepare, and I can present my evidence and make a proper argument, Your Honor.
>
> . . . .
>
> So again, Your Honor, I would ask simply *now that we know what your charge is,* if we can have another date further down the road and allow me time to get discovery, and then prepare argument, look at the legal background, and then come back to the Court.

(Emphasis added.)

Based on the record before us, we hold that Takao's oral charge provided Evans with reasonable and adequate

notice of the specific charges against him and an opportunity to be heard. And based on the existing case law, with which we agree, we hold that Evans's right to procedural due process does not entitle him to a written order to show cause as to why he should not be held in direct summary criminal contempt of court in violation of HRS § 710–1077(1)(a).

## C. Should Evans's contempt hearing be conducted before a judge other than Takao?

Relying on *State v. Brown*, 70 Haw. 459, 465–67, 776 P.2d 1182, 1187–88 (1989), and *Taylor*, 418 U.S. at 488, 94 S. Ct. at 2705, Evans urges, consistent with his right to procedural due process, that Takao cannot preside over his continued contempt proceeding because "where there is a possible bias of the judge that finds and charges another person with contempt, another judge should preside at the contempt proceeding to maintain a calm detachment necessary for a fair adjudication on the contempt charge."

Evans's argument is superficially appealing. In *Brown*, we expressed the following broad dictum:

> The question is whether a judge who causes a criminal contempt proceeding to be instituted may then sit with impunity in judgment of the accused. We begin our analysis with the fundamental propositions that "[c]riminal contempts are crimes, [one] accused [of criminal contempt] is entitled to the benefit of all constitutional safeguards," . . . and "[a] fair trial in a fair tribunal is a basic requirement of due process."

> "Fairness of course requires an absence of actual bias in the trial of cases." . . .

. . . .

"But our system of law has always endeavored to prevent even the probability of unfairness. To this end . . . no man is permitted to try cases where he has an interest in the outcome." . . .

. . . .

The relevant teaching of the Supreme Court is that "[e]very procedure which would offer a possible temptation to the average man as a judge to forget the burden of proof required to convict the defendant, or which might lead him not to hold the balance nice, clear and true between the State and the accused, denies the latter due process of law." . . . When criminal contempt is charged, it signifies that the accuser believes the defendant's conduct was contemptuous. A procedure whereby "the trial, if any, upon the charges shall be by the [judge who lodged it,] without a jury . . . denies the accused due process; it offers a temptation to the judge to forget that "proof beyond a reasonable doubt shall be required for conviction." . . . Due process, in the circumstances, called for a trial before someone other than the accuser.

70 Haw. at 465–67, 776 P.2d at 1187–88 (citations and footnotes omitted) (brackets in original).[7]

---

[7] The entire discussion quoted above was dictum because, in *Brown*, we reversed the defendant's contempt conviction "after concluding [that] the evidence in the case [was] insufficient to sustain [her] conviction." 70 Haw. at 465, 776 P.2d at 1186. We addressed "the other question" of the defendant's due process rights because we determined that it implicated "a matter of public concern that [was] likely to recur" and was therefore "worthy of resolution." *Id.*

As we have noted above, however, we recognized seven years prior to *Brown*, in *In re Nam*, that, in the face of "an open, serious threat to orderly procedure in the case" or to "the orderly administration of justice" giving rise to direct summary criminal contempt, the trial judge is empowered to impose "instant and summary punishment" and to dispense with " 'due and deliberate procedures[.]' " 65 Haw. at 125, 127–28, 648 P.2d at 1105–07 (quoting **Harris**, 382 U.S. at 165).

The apparent tension between the language of *Brown* and *In re Nam* might suggest that the former has overruled the latter *sub silentio*. But it is no coincidence that this court's decision in *Brown* made no mention of *In re Nam*. The two decisions addressed wholly distinct problems — indirect constructive criminal contempt in *Brown* and direct summary criminal contempt in *In re Nam* — and are therefore reconcilable.

By its very nature, indirect constructive criminal contempt is neither "committed in the immediate view and presence of the court [] nor under circumstances that the court has knowledge of all of the facts constituting the offense[.]" HRS § 710–1077(3)(b) (1985).[8] In such instances, the judge, as the "accuser [who, by virtue of lodging the charge,] believes the defendant's conduct [to be] contemptuous[,]" may indeed be tempted "to forget that 'proof beyond a reasonable doubt [is] required for conviction[]' " under HRS § 710–1077(3)(b). **Brown**, 70 Haw. at 467, 776 P.2d at 1187–88. It is for this reason that "[d]ue process, *in the circumstances*, call[s] for a trial

---

[8] *See, e.g.*, *Brown*, *supra*, in which the defendant was charged with intentionally disobeying or resisting the process or mandate of the court to appear for her trial, in violation of HRS § 710–1077(1)(g) (1985).

before someone other than the accuser." *Id.* (emphasis added and footnote omitted).

By contrast, direct summary criminal contempt is "committed in the immediate view and presence of the court[] or under such circumstances that the court has *knowledge of all of the facts constituting the offense*[.]" HRS § 710–1077(3)(a) (emphasis added). Accordingly, the statute affords the court the discretion in appropriate circumstances to "order summary conviction and disposition[.]" *Id.* The rationale underlying the trial court's summary contempt power was articulated in ***In re Gustafson***, 650 F.2d at 1022, which we cited with approval in *In re Nam*:

> [T]he determination to impose summary contempt, assuming that the requirements are met, is wisely left primarily to the trial judge . . . . Trials are by their nature contentious. . . . As contention begins to develop into disobedience or disorder, the trial court is in the best position to judge whether there exists a need for immediate penal vindication of the dignity and authority of the court. In carrying out their heavy responsibility of ensuring [a] fair trial, . . . judges must have the ability to quickly and authoritatively act to halt incipient disorder.

65 Haw. at 125, 648 P.2d at 1105.[9]

---

[9] At the same time, we qualified the trial judge's direct summary criminal contempt powers by the admonition of the United States Supreme Court in *Sacher v. United States*, 343 U.S. 1, 9, 72 S. Ct. 451, 455, 96 L. Ed. 717 (1952), that:

> [I]t is the right of counsel for every litigant to press his claim, even if it appears farfetched and untenable, to obtain the court's considered ruling. Full enjoyment of that right, with due allowance for

Whether, in the context of direct summary criminal contempt, due process "call[s] for a trial before someone other than the accuser," *see Brown*, 70 Haw. at 467, 776 P.2d at 1188, depends both upon the nature of the alleged contemnor's misbehavior and the character of the trial judge's response to it. *Taylor*, 418 U.S. at 503 n.10, 94 S. Ct. at 2705 n.10. Where the record reflects "marked personal feelings . . . on both sides" inflicting lingering "personal stings" on the judge (i.e., where the case conveys an apparent "flavor of animosity on the part of the judge against counsel," *see In re Nam*, 65 Haw. at 126, 648 P.2d at 1106, such that the citing judge manifestly loses his or her capacity to "perform judicial duties without bias or prejudice," *see* Hawaii Revised Code of Judicial Conduct, Canon 3(B)(5) (1992)), another judge "should [be] substituted for the purpose of finally disposing of the charges of [summary] contempt[.]" *Taylor*, 418 U.S. at 503, 94 S. Ct. 2705. On the other hand, where the judge: (1) responds to the alleged direct summary criminal contempt " 'dispassionately and with a decorum befitting a judicial proceeding' "; (2) affords the accused " 'an opportunity to be heard in his own behalf' "; and (3) gives the alleged contemnor " 'reasonable notice of the specific charges when conviction and punishment for trial conduct are delayed until

---

the heat of controversy, will be protected by appellate courts when infringed by the courts. But if the ruling is adverse, it is not counsel's right to resist it or to insult the judge — his right is only respectfully to preserve his point for appeal. During a trial, lawyers must speak, each in his own time and within his allowed time, and with relevance and moderation. These are such obvious matters that we should not remind the bar of them were it not for the misconceptions manifest in this case.

*In re Nam*, 65 Haw. at 127, 648 P.2d at 1106; *accord In re Gustafson*, 650 F.2d at 1020.

after trial,' " due process does not mandate a substitution. *Id.* at 498–99, 503, 94 S. Ct. at 2703, 2705 (citation omitted).[10]

The record before us fails to reflect that Evans's conduct inflicted such "personal stings" upon Takao that

---

[10][T]he time of punishment is a major consideration in determining the disqualification issue . . . . Thus, . . . where it is necessary for a judge to protect the court's dignity and processes by the instantaneous summary imposition of the contempt sanction, . . . the fact that the judge may be personally the victim of the contempt, and hence emotionally involved to a degree ordinarily requiring disqualification for actual or apparent bias, becomes largely irrelevant . . . , the need for instantaneous punishment "militating against" such disqualification because of the delay inevitable thereto.

[H]owever, . . . even in instances calling for instantaneous punishment, a sufficient showing of actual bias on the part of the punishing judge resulting from the sting of the contempt will require disqualification of that judge from presiding over such punishment proceedings . . . .

Where the contemned judge refrains from imposing instantaneous, summary punishment for a contempt committed in open court, in his [or her] direct presence, and against or involving himself [or herself], choosing rather to postpone the official treatment thereof until a more convenient or appropriate time, . . . disqualification of the contemned judge is necessary, or at least highly desirable, where the judge has, as a result of the contempt, become emotionally involved or "embroiled" to a point where his or her objectivity is reasonably reduced or reasonably questionable . . . , although a judge clearly free from such bias may continue to preside over the contempt proceedings . . . . The rationale for this position [is] that, absent the exigencies of the instantaneous proceedings, the due process rights of the contemnor to a completely impartial tribunal have a relatively higher position as against the right of the courts to be free from the administrative burden and delay resulting from the necessity of bringing in a different judge to replace one whose objectivity may reasonably be questioned.

Annotation, *Disqualification of Judge in State Proceedings to Punish Contempt Against or Involving Himself in Open Court and in His Actual Presence*, 37 A.L.R. 4th § 2[a] at 1008–09 (1985) (footnote and citations omitted).

Takao manifestly lost his capacity to perform his judicial duties without bias or prejudice; put differently, the record is devoid of an apparent flavor of animosity against Evans on Takao's part. As we have held, Takao provided Evans with reasonable notice of the specific charges against him and an opportunity to be heard. After initially citing Evans for direct summary criminal contempt and imposing sentence, Takao withdrew his judgment and sentence, afforded Evans the right to counsel, and twice acceded to Evans's request for a continuance. Under the circumstances, Takao responded to Evans's allegedly contemptuous conduct dispassionately and with a decorum befitting a judicial proceeding. Therefore, in light of the nature of Evans's alleged misconduct and the character of Takao's response to it, we hold that due process does not call for a trial before someone other than Evans's "accuser."

## IV.

Accordingly, Evans's petition for writs of prohibition and mandamus is denied.

*Matthew K. Chung* for applicant–petitioner Christopher R. Evans.

*Alexa D. M. Fujise*, Deputy Prosecuting Attorney, for respondent State of Hawaii.